This action is for brokerage upon the sale of valuable real estate situated on Long Island.
The plaintiff claimed $50,000 as agreed compensation, and the principal points litigated were whether such agreement had been made or whether the plaintiff was in fact the efficient cause of the sale. The jury found against the special agreement, but found for the plaintiff a verdict which allowed him a commission, probably of two and a half per cent upon the amount of the sale. Upon the close of the plaintiff's evidence, the defendants moved for a nonsuit upon the ground that the plaintiff had not shown himself to be the efficient cause of the sale, which was denied, and this is now claimed to have been erroneous.
A person claiming a commission upon a sale of real estate must show an employment, and that the sale was made by means of his efforts or agency. An owner may employ several brokers for the sale of the same property, and is of course only liable for commissions to the one who effects the sale. And although he employs one or more brokers he may negotiate and sell the property himself without liability to any one for commissions. (49 N.Y., 563.) The undertaking *Page 322 
of the broker is to make efforts to procure a purchaser, but if he fails he is entitled to no pay unless there is a special contract. But if the purchaser is found by his efforts and through his instrumentality, he is entitled to compensation, although the owner negotiates the sale himself. (51 N.Y., 124.) Nor is it indispensable that the purchaser should be introduced to the owner by the broker nor that the broker should be personally acquainted with the purchaser; but in such cases it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker.
The evidence on the part of the plaintiff tended to prove that the plaintiff acted as a broker for the seller of the property to the defendants, and from motives of personal friendship to them was anxious that they should purchase, as he believed it was a good speculation; that he claimed from them a part of the commission upon that sale, which they declined to pay, but told him to get what he could from the seller and he should have a part of the profits when they sold; that he also suggested to the defendants the mode of disposing of the property to realize the most money; that he procured some maps from the seller which he put up in different places, and also procured signs to be painted and put up near the premises, and inserted an advertisement of the property in the Long Island Star, which referred to the plaintiff as a broker, and which was recognized and paid for by the defendants; that sometime afterward a sale of the property was negotiated by the defendants with one Marwig, acting in behalf of an association of bricklayers, at $420,000. Marwig was introduced to the defendants by one Eckersdoff, a real estate broker, and the evidence of the plaintiff tended to show that both he and Marwig were attracted to this property by the maps and signs and advertisements which the plaintiff put up and caused to be made. It is shown that they frequently spent their evenings in a saloon where the plaintiff had put up a map, and talked about the property; that Marwig and another person went to look at the property, *Page 323 
and was told by a hotel keeper where he called, and at whose house a map had also been put up by the plaintiff, where to find the property and where to inquire for the plaintiff. The plaintiff had no personal communication with Marwig or Eckersdoff before the negotiation for the purchase of the property; but during the negotiation he inserted an advertisement in the Staats Zeitung, when the defendants sent for him and told him not to advertise the property any more or make any further efforts to effect a sale, as they were in negotiation with other parties, and that he should have his commission if the sale was effected. From this evidence the jury might fairly infer that the purchaser was secured by the efforts of the plaintiff, and that the claim of the plaintiff to brokerage was recognized by the defendants by their promise to pay it. It did not appear that the defendants knew that Eckersdoff and Marwig came to purchase in consequence of information obtained through the plaintiff, and it may be that this fact, if it existed, was designedly withheld from them so as to secure commissions for Eckersdoff. However that may be, it is not conclusive against the plaintiff. If he was the producing cause of this sale, his right to compensation would not be affected by the circumstance that the defendants were ignorant of it at the time, nor should he be prejudiced by the acts of others. It was not error to refuse the nonsuit and submit the facts to the jury. Some of those facts were controverted by the defendants, and considerable evidence was produced to prove that the plaintiff had no agency in procuring the purchaser, and that the sale was effected entirely independent of him. It is not our province to pass upon the facts. The court fairly submitted the question, whether the plaintiff was the procuring cause of the sale, to the jury, and their decision is conclusive upon us.
The point is made, that there was no evidence of the rate of commissions nor of the value of the plaintiff's services. The plaintiff claimed a specific sum agreed upon, and the evidence was mainly directed to the question whether *Page 324 
such sum had been fixed by the parties, but there was some evidence which might legitimately guide the jury upon that question. The plaintiff testified, upon cross-examination, that he received one per cent, which was $700, from the seller upon the sale to the defendants, and that his whole commission would have been $1,750, which would be two and a half per cent, and that when the defendants requested him not to make any further efforts to sell the property for them, one of them said, "you shall have your commission or your pay any how." From these facts, if true, it might be inferred that the usual rate was two and a half per cent, and that defendants referred to that rate in their promise. It is true that the plaintiff stated that he received from the first sellers one-half of the brokerage, and that was one per cent, or $700, but when asked the distinct question how much his whole commission would be, he answered $1,750, which was two and a half per cent. It is unnecessary to consider whether the evidence given of the alleged sum agreed to be paid would be any criterion for the jury in awarding damages. The other evidence, although rather slight, was sufficient to uphold the verdict.
The learned counsel for the defendants also insists that, inasmuch as the complaint is upon a contract for a specific sum, the plaintiff could not recover as upon a quantum meruit. This point is not tenable for several reasons.
1. The complaint contains sufficient averments to enable the plaintiff to recover the value of the services rendered, without reference to the allegation of an agreed compensation. 2. At most it was only a variance between pleading and proof, which might be disregarded unless it misled the defendants, which was not pretended. (Code, § 169.) 3. This objection was not taken at the trial. The exception to that part of the charge authorizing the jury, if they found that no specific sum was agreed upon, to find the value of the services, was too general to raise this question. The attention of the court should have been called to the point, as, if valid, it might then have been obviated by an amendment *Page 325 
The offer to prove what share of the recovery the plaintiff had agreed to give his attorney was properly rejected. It was immaterial; as such arrangements are now lawful, a party is not discredited as a witness by making them. Nor does an agreement to give an attorney a share of a recovery, for his services, give him such an interest in the cause of action as would make his admissions proper or make him liable for costs.
So, whether the defendants had realized profits from the sale was immaterial. When the defendants made the contract of sale the duties of the plaintiff ceased, and his right to compensation was then fixed, whether the defendants ever realized profits or not. The offer only contemplated profits then realized, without taking into account the unpaid purchase-money. Besides, the question of profits could only be material under the special contract, which was not found to exist.
We do not find that any substantial error of law was committed on the trial, and the judgment must be affirmed.
All concur.
Judgment affirmed.