JACOB V. D. WYCKOFF, Respondent, *against* CHARLES H. BLISS, Appellant.

(Decided January 21st, 1884.)

A broker employed to procure a party to make an exchange of property with his principal upon terms satisfactory to the latter may be entitled to his commissions where he has brought such a party and his employer together, and they, upon negotiations between themselves, come to an agreement for such an exchange, without his being required by his employer to bring the other party to terms upon any particular point.

APPEAL from a judgment of the General Term of the Marine Court of the city of New York affirming a judgment of that court entered upon the verdict of a jury, and from

an order affirming an order denying a motion for a new trial.

The action was brought to recover commissions claimed by plaintiff as a broker on an exchange of real estate between the defendant and one Matthias B. Smith.

*G. L. Rives*, for appellant.

*Henry Daly, Jr.*, for respondent.

J. F. DALY, J.—Plaintiff was employed by the defendant to find a purchaser for the property on Fourth Avenue or a party who would make a trade for it at the price of $105,000. He introduced the party who afterwards contracted with plaintiff at that figure for an exchange of it for other property, and brought the plaintiff and said party together at the property in question on December 14th, 1882. He took the plaintiff on December 17th, 1882, to the office of that party, Mr. Smith, in relation to the property and to try and obtain an offer from him. Mr. Smith spoke of lots he owned on 85th Street and talked of putting them in in exchange; no price was fixed; no proposition was made, but Mr. Smith said that when he was ready to make a proposition he would submit it to plaintiff. Plaintiff and defendant left him and then talked over the probabilities of Smith's making a proposition; defendant said it would be useless, that in his opinion he (defendant) could only make a deal with Smith through W. Lock (another broker, who had accompanied Smith at his first interview with defendant) and a Mr. Seymour; plaintiff said he wanted to try a little farther; that he had other parties.

In view of the arrangement (to which defendant himself testifies) that Mr. Smith was to submit any proposition he might make, to plaintiff, and the conversation just detailed, it was, at the very least, a question for the jury as to whether plaintiff had abandoned his efforts to get a proposition from Smith and whether defendant then and there revoked plaint-

iff's authority. I think the evidence was not sufficient to warrant an affirmative answer to that question.

Plaintiff did nothing further with respect to Smith and received no proposition from him. Defendant, however, a day or two after the above conversation, met Mr. Lock in Mr. Seymour's office, went with him to look at Mr. Smith's lots on St. Nicholas Avenue and 148th Street, received an offer for exchange from him on behalf of Mr. Smith, and on December 20th, three days after the interview with plaintiff at Mr. Smith's office, made a contract with the latter for an exchange as follows: defendant gave his Fourth Avenue property at the price of $105,000 subject to mortgages amounting to $51,000 for the following property of Smith: three lots on 85th Street valued at $67,500 on which defendant was to execute back to him mortgages to the amount of $27,000; and five lots on St. Nicholas Avenue and 148th Street valued at $13,500 on which Smith was to lend defendant $7,000 on bond and mortgage.

Plaintiff knew nothing of the negotiations between defendant, Smith and Lock after December 17th, 1882, and the question for the jury was whether he was the procuring or efficient cause of the sale or exchange so made. It was a fair question for a jury upon the evidence, and a verdict in favor of plaintiff thereon should not be disturbed.

Between the introduction of Smith, the purchaser, to the defendant, by plaintiff, and the agreement for the exchange, but six days intervened; and but three days between the last interview between all the parties and such agreement. At that last interview the lots owned by both parties were referred to; the plaintiff and defendant were to wait for a proposition; within a day or two it came directly to defendant through Lock, instead of to plaintiff to whom it was promised. What operated on the mind of Smith to induce the proposition is to be inferred from the facts. It is not improbable that it was the result of the consideration induced by plaintiff's first calling his attention to the property six days before and bringing him into communication with the defendant.

In the case of *Jarvis* v. *Shaefer*, (General Term of this court, January, 1883) we refused to disturb a verdict for plaintiff, where, after the original introduction and some abortive attempts at arriving at an agreement, negotiations were dropped for several weeks, and then the principal, at the suggestion of another broker, re-opened negotiations without the knowledge or assistance of plaintiff with the purchaser, which finally resulted in an agreement. We held that there was no satisfactory evidence of abandonment of the offer to effect the exchange of property although the broker stopped urging the matter on the parties when they professed to be unable to agree; that there was reason to infer from the proof that the parties although they did not agree at first never gave up the idea of making the exchange of the properties to which plaintiff was the first to call their attention, and that acting upon the impulse originally communicated by him they brought themselves finally to a point where they agreed.

These expressions suit the present case. The plaintiff did not abandon the effort to bring the parties to an agreement; he was waiting, with defendant's knowledge and consent, for a proposition from the other side; and he was not expected to urge Smith any further, because defendant told him he thought it was of no use to do so. The proposition however came almost immediately, not to him, it is true, but to his principal, but this makes no difference. Nor does it matter that it came through Lock, for he was not defendant's broker but Mr. Smith's.

It is not necessary that the negotiations for sale or exchange should be conducted by the broker, if it be shown that he introduced the parties and his introduction led to the contract so that he was the procuring cause of the sale (*Sussdorff* v. *Schmidt*, 55 N. Y. 319, 320).

There is a difference between the duty of a broker employed to find a purchaser at a fixed price and that of a broker employed to find a party willing to make a trade of property satisfactory to the employer. In the latter case the duty of the broker is often performed, where he brings the parties together, leaves them to negotiate, and come to

an agreement between themselves. Where that is his whole duty he may take a commission from both sides (see *Jarvis* v. *Shaefer*, above). This shows he has no duty except to bring the parties together. He has other and additional duties, however, where in the course of negotiation, he is required by his employer to bring the other party to terms upon any particular point. There is nothing of the kind in this case; for after the offer made to the defendant by Smith they proceeded to negotiate and came to an agreement. I think the duty of plaintiff under his employment was to do no more than to bring to defendant a party who would agree to an exchange of property on defendant's terms. He brought Smith to defendant, they agreed upon terms satisfactory to defendant, and his duty was done.

In the case, however, of employment to find a purchaser at a fixed price the duty of the broker is to bring to his principal a party able and willing to take the property at such price. If he cannot get an offer of that price he has not performed his duty, and if he relinquishes the effort to obtain the price his principal is not precluded from negotiating with any person whom the broker has introduced to him, nor from making a sale to such person at the stipulated price, and the broker is not entitled to commissions on such sale. Such was the case of *Wylie* v. *Marine Bank* (61 N. Y. 415), the broker there having failed to obtain his employer's price from the purchaser and thereupon abandoning further effort in the premises. In the case of *Sibbald* v. *Bethlehem Iron Works* (83 N. Y. 378), the broker's authority to make sales of goods was terminated before he made an offer, or procured an order from a customer, and he thereupon formally abandoned the effort to negotiate with the party with whom he was in communication. These authorities do not in my opinion require a reversal of this judgment.

The judgment and order appealed from should be affirmed, with costs.

VAN BRUNT and VAN HOESEN, JJ., concurred.

Judgment and order affirmed, with costs.