### KING *v.* BAUER.

*(Common Pleas of New York City and County, General Term.* February 3, 1890.)

FACTORS AND BROKERS—REAL-ESTATE AGENTS—COMMISSIONS.

In an action to recover commissions for services rendered by a real-estate broker, it appeared that the broker's agent called the purchaser's attention to the land, carried on active and continual negotiations with them, took them to see the property, described its advantages, gave them the owner's name, and used every means to make a sale. The purchasers finally made an offer for the land, which was refused by the owner. Subsequently, however, the owner closed the deal with the purchasers, but refused to pay the commissions, saying the deal was a poor one. *Held* that, as the broker was the active and efficient procuring cause of the sale, he was entitled to his commissions, though he did not bring the owner and purchasers in actual contact, and though the sale included other land, for which negotiations had been pending some time before the broker's employment.

Appeal from judgment on report of referee.

Action by William G. L. King against Moritz Bauer to recover commissions for services rendered as a real-estate broker. The action was tried before a referee, who made the following report.

"The defendant is an extensive dealer in real estate in the city of New York, and in October, 1887, was the owner of a plot of land located between One Hundred and Fourth and One Hundred and Fifth streets, and the Boulevard and West-End avenue, which he had purchased in May, 1887. There were two mortgages upon the property,—one for $115,000 and one for $25,000,

—the interest on which would become due on or about the 3d day of November, 1887. In October, 1887, the defendant employed the plaintiff to procure him a purchaser for said premises. No price was named, but plaintiff was directed to submit any offer over and above the amount of the mortgages. The defendant was anxious to make a sale of the property. The plaintiff at once initiated very active and persistent efforts for the sale of the property, and carried on several fruitless negotiations. He engaged the services of Mr. Foshay, another broker, to aid him, because he believed that Mr. Foshay was acquainted with certain people who would be likely to purchase such a parcel of land. Mr. Foshay went at once to Messrs. Beck & Runk, and carried on active and continual negotiations with them. He took Mr. Runk up to see the property, gave him the owner's name, described the advantages, and used every means to make a sale, and had several conversations with Mr. Runk, and also with his partner, Mr. Beck, and continually urged them to purchase the property, and at last he was informed that Messrs. Beck & Runk might take the property if the owner would accept a West-Side house and some cash for his equity. Foshay reported this offer to the plaintiff, who at once reported it to the defendant; but the defendant declined the offer, saying that he would not take a West-Side house in any event; that if it was avenue property it might be different. About a week after this report was made, defendant informed plaintiff that he had received an offer of $7,500 in cash, and a house on West Seventy-First street, for his equity in the premises in question. The plaintiff at once asked him if the West Seventy-First street house did not belong to Beck & Runk; and, upon his replying that it did, plaintiff informed him that that was the house he had spoken of a week previously, and that he had been carrying on negotiations with Beck & Runk; and the defendant thereupon replied that it made no difference, anyhow; that he would not take a dwelling-house on the West Side. Plaintiff continued his efforts to bring about a sale; and about November 29th the defendant told him he thought he should close up that transaction with Beck & Runk; and when plaintiff claimed his commission he refused, saying that the deal was a poor one, and he could not recognize the plaintiff as a broker in it. The property was sold about December 2, 1887, to Messrs. Beck & Runk, for $160,000, defendant taking in payment their equity in the house of West Seventy-First street, amounting to $12,500; cash, $7,500; and the mortgages on the property, amounting to $140,000; and the deed was afterwards delivered and recorded. There is no dispute regarding the strenuous efforts made by plaintiff and his agent, Mr. Foshay, to procure a customer for the lots in question; and, in my opinion, there is very little, if any, doubt that the property in question was first really called to the attention of the purchasers by Mr. Foshay. If it had ever been mentioned before, it had been forgotten and passed over, and had never been impressed upon their minds, nor had they ever seriously considered purchasing it. The evidence clearly shows this: Mr. Untermyer testified that he had carried on negotiations for a year on behalf of Beck & Runk as to other property, and says he mentioned to them this piece of property in the course of the discussion; but he evidently did not lay much stress upon it, for it does not appear that anything further was said or done about it until after it had been called to the attention of Beck & Runk by Mr. Foshay. Mr. Untermyer did not seem to know where the land was located; and Mr. Runk had never seen it, or heard who owned it, until Mr. Foshay took him there, and told him. The property was certainly first called to the serious attention of Beck & Runk by Mr. Foshay; and he was the cause which brought the active negotiations on their part for its purchase. If they had heard of it before, the idea of purchasing it had never occurred to them until the arguments and persuasions of Mr. Foshay were brought to bear upon them. It is true that plaintiff did not bring the defendant and the purchasers together in actual contact. But the defendant was a real-estate man. He did

not need any one to negotiate for him. He only wanted the broker to produce some one willing to negotiate, and he could do the rest. But, in any event, plaintiff was stopped in his negotiations by defendant's refusal to take the West-Side house in part payment. I am forced to conclude, from the entire evidence, that the plaintiff was the active and efficient procuring cause of the sale, and without his efforts the sale would not have been made. I was not much impressed with the defense offered by defendant. He claims that the negotiations which led to the sale were carried on by Mr. Isaac Untermyer, who was his counsel, and also the counsel of Beck & Runk, and that the transaction covered many other considerations besides the sale of this property. But from an examination and consideration of the evidence, I am convinced that, although there have been negotiations going on for some time between Mr. Bauer and Messrs. Beck & Runk, through their lawyer, that those negotiations never included the sale of the premises in question until after plaintiff had actively interested Beck & Runk in the same, and had procured them to consider the purchase and make an offer, and that the sale of the premises in question was brought into those negotions as an after-thought, for the purpose of defeating plaintiff in his claim for commissions. Every indication points that way. The consideration for the lands in question appears to have been separate, and all other transactions stood fairly upon their own merits, without the need of any outside aid to support them. The Pinckney *lis pendens*, upon which so much stress was laid, and the removal of which was claimed to be the key to the entire transaction, turns out, upon investigation, not to have been removed, but to be still alive, and on file; and the testimony of Mr. Bauer regarding that entire transaction is of such a nature as to entitle it to very little weight. Mr. Runk's evidence is rendered almost worthless by his singular failure of memory upon cross-examination; but I have no doubt his failure to remember was caused by the fact of his being such an exceedingly busy man, and seeing so many people, and carrying on so many large transactions, rather than by any desire to dishonestly support defendant's contention. The plaintiff has fairly earned his commission upon the sale of the property, and is entitled to judgment for the sum claimed, with interest."

Defendant appeals.

Argued before LARREMORE, C. J., and BISCHOFF, J.

*Guggenheimer & Untermyer*, (*Maurice Untermyer*, of counsel,) for appellant. *P. & D. Mitchell*, (*Chauncey S. Truax*, of counsel,) for respondent.

BISCHOFF, J. On the trial it was admitted that defendant had employed plaintiff as a real-estate broker, to negotiate the sale of a block of ground belonging to defendant, and bounded by One Hundred and Fourth and One Hundred and Fifth streets, and the Boulevard and West-End avenues; that a sale of such block of ground was subsequently made by defendant to Beck & Runk; and that the customary brokerage is 1 per centum of the purchase price. Defendant, however, maintained that plaintiff was not the procuring cause of the sale, and therefore not entitled to the commission. Appellant's contention, unless the evidence shows respondent to have been the procuring cause of the sale, must, as an abstract proposition of law, be accepted as correct; and the only question, therefore, to be determined on this appeal is whether or not the conclusions of the referee are justified by the evidence. A careful examination of the testimony fails to disclose any error. The substance of all the testimony is fully and correctly stated in the referee's opinion, and the matters advanced by the several parties for and against the claim in suit have received careful and impartial consideration. Indeed, the opinion may well be adopted as the opinion of this court, and no conclusions other than those made could well have been arrived at by the referee. The judgment appealed from should therefore be affirmed, with costs.