ARMOUR C. ANDERSON, PLAINTIFF IN ERROR, v. SAMUEL S. SMYTHE, DEFENDANT IN ERROR.

1. WHEN REAL ESTATE BROKERS ENTITLED TO COMMISSIONS.—To render the owner of real property liable for commissions to a broker who has been authorized to sell it, where the sale has been effected by the owner himself, the principal fact recognized as the controlling fact in such cases must be found, that the parties were brought together and the transaction made possible by the instrumentality of the broker.

2. SALE BY OWNER WITHOUT KNOWLEDGE OF PREVIOUS NEGOTIATIONS.—Although a broker may call the attention of a purchaser in the first instance to property in his hands for sale, where he neither informs him of the owner's name, nor introduces him to the owner, nor even mentions the fact to the owner, and the latter, without knowledge of the previous negotiations, sells the property to such purchaser, he is not liable for commissions.

*Error to Superior Court of the City of Denver.*

Mr. F. A. WILLIAMS, for plaintiff in error.

Mr. I. N. STEVENS, for defendant in error.

REED, J.   Plaintiff in error was plaintiff below, and brought suit against the defendant to recover the sum of $137.50 alleged to be due as commission upon the sale of two building lots in the city of Denver.   The property was sold by the owner, the defendant.   It is conceded that prior to the sale plaintiff and defendant had a conversation in which defendant agreed to pay the regular commissions, if

the plaintiff sold the property for $3,000. The property was sold for $2,900, and that $137.50 was the regular commission upon that sum is not disputed. The property was purchased by parties named Taber and Burton. The evidence established the fact that the plaintiff called the attention of Taber to the property in the first instance by asking Taber's opinion in regard to the value of the property, and suggesting that he, (plaintiff,) and another, thought of buying it, afterwards informing him (Taber) of their inability to buy, and proposing to sell to him, and as an inducement, offered to divide with him the commission. This appears to have been all that occurred between them. Taber associated Burton with himself in the purchase, and bought the lots directly from the defendant. The name of the owner of the property · was not communicated by the plaintiff, nor was defendant informed by Taber that he had had anything whatever to do with plaintiff in connection with the property ; neither did the plaintiff inform the defendant of any attempt by him to sell to Taber, until after the sale was made by the defendant at the time he claimed a commission upon the sale. There was no evidence that the defendant, at the time he placed the property in the hands of the plaintiff for sale, precluded himself from selling it in person. The case was tried to the court without a jury and judgment for the defendant.

Considerable testimony was received,—some of it rather contradictory.

It is assigned for error:—First. That the court excluded evidence offered on the part of the plaintiff. Second. The court erred in admitting evidence offered on the part of the defendant, objected to by the plaintiff.

These supposed errors cannot be regarded by the court. We find in the record no objections entered or exceptions saved, nor is our attention called to any evidence, the admission or rejection of which is supposed to be erroneous. The other two assignments of error are general, that the court erred in finding for the defendant. There is an able and

carefully prepared brief and argument filed on the part of the plaintiff, no appearance for the defendant.

It is contended that the court erred in the law controlling the case, and many authorities are cited in support of the contention. The law is well settled in this state, that " when an agent produces a purchaser acceptable to the owner, and able and willing to purchase on terms satisfactory to the owner, the agent has performed his duty," and is entitled to the commission. *Finnerty v. Fritz*, 5 Colo. 174; *Buckingham v. Harris*, 10 Colo. 455.

The rule is well defined and stated to be, that the agent is entitled to his commission " where the sale really proceeds and is effected through the acts of the agent, though he did not negotiate the sale." *Stewart v. Mather*, 32 Wis. 644; *Lincoln v. McClatchie*, 36 Conn. 136; *Cooke v. Fiske*, 12 Gray (Mass.) 491.

" If the agent introduces the purchaser, or discloses his name to the seller, and through such introduction and disclosure negotiations are begun and a sale of the property is effected, the agent is entitled to his commission although the sale be made by the owner." *Bell v. Kaiser*, 50 Mo. 150; *Jones v. Adler*, 34 Md. 440; *Bush v. Hill*, 62 Ill. 216; *Lloyd v. Matthews*, 51 N. Y. 124.

The latter case carries the doctrine of right of compensation to the broker, as far or farther than any other case found, It is stated by Lott, J., to be: " It is sufficient to entitle a broker to compensation that the sale is effected through his agency as its procuring cause; and if his communications with the purchaser were the cause or means of bringing him and the owner together, and the sale resulted in consequence thereof, the broker is entitled to recover."

In *Sussdorff v. Schmidt*, 55 N. Y. 319, the rule was also carried to the extreme limit, but it is there said by Church, C. J.: " A person claiming a commission upon a sale of real estate must show an employment, and that the sale was made by means of his efforts or agency, * * * and although he employs one or more brokers, he may negotiate and sell the

property himself without liability to any one for commissions."

In regard to the correctness of these principles there can be no question, but to render them applicable and available, the principal fact must be found, that the parties were brought together and the transaction made possible by the instrumentality of the agent. This fact was evidently found against the plaintiff by the court, and, under the evidence, the court was probably justified in its finding. The parties were not brought together by the agent. The name of the owner was not disclosed to Taber by the agent, nor did he inform the defendant that Taber was a possible purchaser, nor did Taber inform the defendant that the plaintiff had any connection with the transaction whatever.

In *McClaive v. Paine*, 49 N. Y. 563, the court, by Grover, J., uses the following language : " His commission is earned by finding a sufficient purchaser, ready and willing to enter into a valid contract for the purchase upon the terms fixed by the owner, and having introduced such a one to the owner as a purchaser, is not deprived of his right to commission by the owner negotiating the contract himself. (*Lyon v. Mitchell*, 36 N. Y. 235 ; *Barnard v. Monnott*, 3 *Keyes* 203 ; *Moses v. Bierling*, 31 N. Y. 462 ; *Redfield v. Tegg*, 38 Id. 212.) In the present case the plaintiff did not introduce Blodgett as a purchaser of the parcel in question. So far as appears he had no knowledge that he would purchase it upon any terms."

This case is cited with approval in *Sussdorff v. Schmidt* (*supra*), which, as stated, may be considered an extreme case. It is apparent that the court in neither *Lloyd v. Matthews*, nor *Sussdorff v. Schmidt* did, or intended to overrule or modify *McClaive v. Paine*, *Lyon v. Mitchell*, *Barnard v. Monnott*, *Moses v. Bierling* or *Redfield v. Tegg*, and these assert the necessity of the agent having directly brought the parties together, the language of Grover, J., being, " and having *introduced* such a one to the owner as a purchaser ; " again, " in the present case the plaintiff did not *introduce* Blodgett as a

purchaser of the parcel in question." In that case, as well as the former cases cited and relied upon in that opinion, great stress is laid upon the *introduction*, the bringing of the parties together, and the statement by the agent to the owner that the party was a probable purchaser, and this is required by the decisions of other states, generally.

Less than this, certainly, could not entitle an agent to a commission. The principal should at least know from the agent, of his (the agent's) participation in the transaction.

The rule in regard to the right of the agent to compensation has been stretched in some courts to its utmost tension, and should, if possible, be restricted, not enlarged. While the agent should, in all cases, be entitled to payment of commissions, honestly earned, the owner of property should not be at the mercy of an agent of whose pretended participation he had no knowledge whatever.

The decision of this case was dependent upon the finding of the facts, under the rules of law as above stated. There was no great conflict in the testimony, and the evidence was sufficient to warrant the finding; as said by Church, C. J., in *Sussdorff v. Schmidt*, (*supra*,) " it is not our province to pass upon the facts."

Under the circumstances of this case the finding of the facts by the court is conclusive upon us. The judgment should be affirmed.

*Affirmed.*

BISSELL, J., dissenting.

I am unable to concur in the conclusions at which my associates have arrived, or assent to the rule enunciated in the principal opinion, with the limitations which are put on it. If the differences between us related solely to conclusions upon the facts as disclosed by the record, I would content myself with the simple statement of my disagreement with the results; my inability to subscribe to the rule of law, as they have declared it, of necessity requires a statement of my position.

As I apprehended it the judgment does not rest upon the conclusions arrived at by the trial court upon conflicting testimony. It may be well and accurately said that the judgment simply expresses the court's view as to the law upon facts established by the testimony. There is substantially no discrepancy or difference between the testimony given by the different witnesses, and the record presents what might well be termed an agreed case to which the law is to be applied.

When property is put into the hands of a real estate agent for sale and he directly negotiates one, or is the moving cause by which one is effected, either by him or the owner, the authorities agree that he is entitled to his commission. To this extent my position is in entire accord and harmony with the law declared in the principal opinion. It remains to be determined whether under the evidence the broker was the procuring cause, as that term has been defined by the cases. It will be useful first to express what is disclosed by the record. About the agency there can be no question. Both Anderson, the agent, and Smythe, the owner, testified directly upon that proposition. Prior to the interview which resulted in the creation of the present agency the property had been in Anderson's hands for sale at $2,200, at $2,500, and at $2,800. On January 25, 1889, Anderson was in Smythe's office and asked the present price of the property, which was stated to be $3,000. Anderson inquired "if there was a regular commission in it at that price, and Smythe said there was. Anderson told him he had a party that he thought he could sell it to. Smythe said he would take one third cash and pay a regular commission out of the payment." Smythe himself testifies, "at this interview Anderson spoke to me again about those lots. He talked about buying them and about he and Wolff buying them, and about selling them. They asked me the price and I told them $3,000, with the regular commission to be paid out of it if he sold them." These are the only witnesses who testified concerning the creation of the agency. This evidence clearly

settles the fact to be that Smythe the owner of the property made Anderson his agent for the purpose of selling, and that under such an agency if Anderson turns out to be the moving cause by which a sale was made he would become entitled as against Smythe to the commission agreed upon. As to what followed and was done by the agent with reference to the sale of the property there is very little contradiction, and none as to the important facts essential to the determination of the controversy. Anderson testifies, " that he went from Smythe's office where the interview had been had directly to his own and telephoned to Taber that he had a couple of lots that he thought would suit him." He testified that, " on Wednesday evening Mr. Taber came to his office on his way to supper and talked about these lots. He told him the price ; that there was a regular commission in it to him and that he would divide one half of it with him, and told him that the lots were the ones next to Dr. Smythe's house. That Taber said he would look at them the next morning." At this interview Anderson pointed out the lots and showed Taber where they were located, probably without stating their ownership. Taber testified that he received the telephone message as Anderson stated. He testified that Anderson and Wolff stated that they had concluded not to buy them, and that they were for sale, he having asked the price. The price was given and the terms of payment, and he testified " that no one else had called his attention to them when he saw them." Taber testifies that he asked Anderson, " about this piece of property ; that Anderson told him the terms ; that Anderson said ' if you want to buy I can get you half commission.' " He further states, " when I first called to see Anderson I first spoke about those lots. I naturally wanted to know if he had closed the transaction, because I was thinking of buying them. I do not just recollect how he came to say that he could get me half commission, but spoke something about it; if any one bought could get those same terms ; I asked him if I could get the terms, that is half commission. He informed me that if I

took them he could get me half commission, that he could get half commission, that he would allow me half out of the purchase money." Taber recalled, further testified, that Anderson told him in January at the time of this conversation that he had the property for sale. In his later testimony when he narrates the conversation that occurred between him and Anderson at the interview at which the sale was discussed, he states that Anderson then said that it was impossible for him and his partner to buy them, as they were carrying all they could dispose of, and he continues : " If I remember right he said I don't know but it would be a good investment for anybody to buy ; he says if you want to buy I can get you half commission. He told me about where the lots were." This is substantially what the record contains with reference to the creation of the agency, the employment of the broker and what the broker did with reference to calling the purchaser's attention to the property, and discloses the fact to be that no other person either owner or agent brought the property home to the attention of the ultimate purchaser Taber, or furnished him any information upon which he acted, when he subsequently concluded his purchase and bought of the owner Smythe. It is stated that in all these negotiations Anderson did not disclose to Taber the name of the owner, but that as Taber testifies he learned it elsewhere, for he says, " I called at the corner house adjoining the lots, and a little boy who came to the door told me the owner of them, and where he was to be found. He gave me his address and I found it." An important circumstance to consider in determining the inquiry whether the agent was the procuring cause which led to the sale, is the fact that Taber examined the lots the day following his interview with the agent, and that as the result of his examination he called upon the owner and completed the purchase. He had never learned of the fact, the lots were for sale, or their price or location, until the interview with Anderson, and, as he puts it, " the night I first saw the lots I first saw Dr. Smythe about buying them." The lots were sold on

precisely the terms on which they were put in Anderson's hands for sale, less a reduction of $100 in the price, which concession all agree would be without moment in determining Anderson's right to compensation. This history and narration of testimony furnishes an irrefragable argument in support of the proposition that the agent was the moving cause of the sale. The agency is conceded, the employment is admitted, the amount of commission to be paid by the owner was settled by the terms of the employment, and the only demonstration essential to support the recovery is one which shall show that the agent was the procuring cause. According to that evidence it transpires that upon the afternoon of the day of the creation of the agency the agent put himself into communication with Taber, which resulted in a subsequent interview at the agent's office. Up to this time the subsequent purchaser was without knowledge of the lots, their location, their value, their price, or the fact that they were in the hands of an agent for sale. The interview between him and Anderson at Anderson's office brings to his attention all these elements. The value of the property is discussed, its location is pointed out, the terms upon which it can be bought are discussed and stated, and he is informed that they are in the hands of the agent for sale, and that upon purchase the agent will divide the commission with him. He immediately proceeds to investigate the situation, determine the character, and decide for himself upon the value of the property. He visits and inspects it, and evidently being impressed with the advantages of the bargain inquires of the boy the name of the owner and immediately concludes with him the purchase of the property. Among all the cases which have grown out of a controversy as to the right of an agent to a commission for the sale of property where the facts have been stated in the opinions, there can scarcely be one found more strongly presenting the agent as the moving and procuring cause than the one at bar.

This testimony and these facts seem to establish beyond a peradventure that the purchaser was found by the efforts of

the agent and through his instrumentality, and the employment being conceded the agent is entitled to compensation, although the owner directly negotiated the sale. Notwithstanding these persuasive facts and considerations I might have yielded my convictions as to their force, if the rule of law applicable thereto had been stated according to my understanding of the cases. When the main opinion states that the introduction of the purchaser to the owner and the bringing of the parties together is a condition precedent to entitle the agent to his commission, I am unable to assent to the doctrine. I do not understand the case of *Lloyd v. Matthews*, 51 N. Y. 130, to decide the proposition as it is stated in the principal opinion. According to that case, as I read it, the introduction is totally unnecessary, providing it can be found from the evidence that the broker was the procuring cause. Most of the objections which were urged and argued upon the appeal in that case were based upon the refusal of the court to give the instructions as asked by the defendant's counsel. Among these was the following and fourth instruction: "That a broker is not entitled to a commission in this case merely for giving information to the person who subsequently buys, and for recommending the purchase, unless the broker goes further and either directly negotiates the sale or directly brings together the buyer and seller, who thereupon complete the bargain." The court refused this charge and exceptions were taken and argument had thereon. With reference to this proposition or request to charge, the court proceeds to say: "The court also properly refused to charge the jury in the terms of the fourth proposition. *The latter portion of it is erroneous.* It is sufficient to entitle the broker to compensation that the sale is effected through his agency as its procuring cause; and if his communications with the purchaser were the cause or means of bringing him and the owner together, and the sale resulted in consequence thereof, the broker is entitled to recover; and the court so charged in substance in the charge subsequently given to the jury." The next request was the fifth, to wit: "That a broker's

duties are not performed so as to entitle him to commission, unless he brings the buyer and seller into communication with each other, and the sale results therefrom." In regard to this request to charge, the court say: "The fifth proposition is substantially the same as the last part of the fourth proposition; and what is said in relation to that applies to this." It is thus evident that the paragraph from this decision of Judge Lott, quoted in the main opinion, is not an authority in support of the proposition that an introduction or the taking of the purchaser by the agent to the owner is an indispensable prerequisite to the recovery of commissions. While it may well be said perhaps that this case did not intend to overrule the earlier cases in New York cited by the learned judge in his opinion, yet it can only be true upon the hypothesis, which to my mind is very apparent, that the earlier cases were not based upon that particular consideration, nor was it deemed essential to the decision arrived at in them. This seems to be very clear, because in the later case of *Sussdorff v. Schmidt*, 55 N. Y. 319, it is directly adjudged that the introduction is totally unnecessary and that it is equally unimportant that the broker should know the purchaser. In the case spoken of, the court, by the learned Chief Justice Church, say, page 322: "Nor is it indispensable that the purchaser should be introduced to the owner by the broker, nor that the broker should be personally acquainted with the purchaser; but in such case it must *affirmatively appear that the purchaser was induced to apply to the owner* through the means employed by the broker." It is not conceivable that an express adjudication upon this particular proposition should have been made by so learned a court, composed of the same judges who sat in *McClave v. Paine*, without some reference to that case, if it was deemed to be in conflict with it. I therefore assume that the question was by the court not regarded as involved in *McClave v. Paine*, and that when the question was presented to the court for adjudication the law was conceived to be as expressed in *Lloyd v. Matthews*, and *Sussdorff v. Schmidt*. The language of these decisions

most undoubtedly is that the introduction is not indispensable, and that full force must be given to the expression used in that regard, since in the Sussdorff case it is expressly adjudged that the broker need not be personally acquainted with the purchaser. If unacquainted, the introduction would certainly be impossible, and consequently it is neither indispensable nor an important element to be considered in determining whether or not the agent was a procuring cause of the sale. This same doctrine has found expression in well considered cases in other states, and no case to the contrary seems to have been found or cited. *Lincoln v. McClatchie*, 36 Conn. 136; *Hanford v. Shapter*, 4 Daly 243; *Anderson v. Coxe*, 16 Neb. 10; *Newhall v. Pierce*, 115 Mass. 457.

It is therefore my conclusion upon the testimony that the broker Anderson was the procuring cause of the sale, and that he earned his commission, which he was entitled to recover of the defendant Smythe. The judgment should be reversed.

*Affirmed.*