(6 Misc. Rep. 210.)

### GEMUNDER et al. v. HAUSER.

(City Court of New York, General Term. December 8, 1893.)

BROKER—WHEN PROCURING CAUSE OF SALE.
　Defendant employed plaintiff to sell a violin for a certain commission,
　whereupon plaintiff issued a circular, giving a history of the violin, and
　stating that he had sole control of the sale. Afterwards plaintiff called
　the attention of a violinist to the instrument, and promised to introduce
　her to defendant, that she might see it. The violinist met defendant
　through a third person, and was shown the violin, and she asked if it
　was the one plaintiff had spoken of, and was told it was. Plaintiff re-
　quested defendant to allow the violinist to play on the violin at a con-
　cert, and also urged her to buy it, which she afterwards did. *Held*, that
　plaintiff was the procuring cause of the sale.

Appeal from trial term.

Action by August Gemunder, August Martin Gemunder, and Ru-
dolph Gemunder against Isidor Hauser to recover commissions on
the price of a violin alleged to have been sold by plaintiffs for de-
fendant. From a judgment entered on a verdict in favor of plain-
tiffs for $525, and from an order denying a motion for a new trial,
defendant appeals. Affirmed.

Argued before EHRLICH, C. J., and NEWBURGER and Mc-
CARTHY, JJ.

Townsend, Dyett & Einstein, for appellant.

Ullo, Ruebsamen & Cochran, for respondents.

McCARTHY, J. In the latter part of the month of March, 1891,
the defendant, who was the owner of a very rare violin, known as an
Antonio Stradivarius, called at the store of the plaintiffs, who are
dealers and makers of violins. The conversation turned on this
violin, with which the plaintiffs were familiar by reason of an in-
dorsement which they had given as to the genuineness of the instru-
ment. The defendant having informed the plaintiffs that the vio-
lin was still unsold, they suggested that the instrument should be

placed in the hands of one house, who would undertake to advertise it, and thus bring it before the musical public in the proper business way; also saying to the defendant that he would never be able to sell it if he kept bringing it from dealer to dealer. The defendant stated that he was willing to sell it for $3,500, but the plaintiff said that it should be sold for not less than $4,000, and ought to bring $5,000; and that, if the instrument was placed in the hands of one dealer for about a year, on those conditions his firm would undertake the sale, if the defendant should select them; and that, if the defendant decided to let them have the sale of it, he should bring them the history, as they were about to issue a circular in April; and they agreed also to notify defendant when the circulars were to be issued. Subsequently, and on April 18, 1891, the plaintiffs wrote to the defendant, requesting the date and history of the violin, so that it could be entered in their list. In reply to this letter the defendant called on the plaintiffs, and brought them the history requested. He was then told that it was too late for the regular list, but that a special circular would be issued for this violin, and it was agreed that the price was to be $5,000, of which the plaintiffs were to receive 10 per cent. commission. Plaintiffs issued a circular containing a history of the violin, and requesting that all correspondence regarding it should be adressed to them at their place of business in the city of New York, and stating that they had "sole control of the sale of the instrument." The plaintiffs caused copies of the circular to be sent to the defendant, and to be distributed in various cities, and among various musical people, and also published a notice about the violin in several musical newspapers in this country and in England. In October, 1891, plaintiffs became acquainted with Miss Von Stosch, the famous violinist, and called her attention to the instrument, discussed its merits with her, and promised to introduce her to defendant, that she might see it. Before the plaintiffs had an opportunity to perform their promise, she became acquainted with a friend of the defendant, who spoke to her about a violin of which his friend was very proud, and asked her if she would not like to see it, as it was a very magnificent instrument. She then went to defendant's house, where she met the defendant himself, and saw the instrument referred to. Defendant informed her that it was the instrument that was reported to belong to Vieuxtemps. She immediately remarked: "This must be the violin of which Mr. Gemunder has talked so highly." Defendant replied that it was, and that Mr. Gemunder had circulars out for sale of the instrument. Miss Von Stosch told defendant that Mr. Gemunder had spoken highly of the instrument, and called her attention to it, and that it was an instrument of which she knew nothing at the time of her going to Mr. Gemunder's. She was also allowed to try the instrument, but nothing was said by the defendant about selling it to her. The next day she saw Mr. Gemunder, and told him all that occurred the previous day. The plaintiffs immediately wrote to the defendant, informing him that they had been negotiating with Miss Von Stosch about the instrument, and requesting

that she might be allowed to play on it at the Arion concert; and that, if she liked the instrument, they would endeavor to have her wealthy friends purchase it for her. The plaintiffs also saw the defendant about the loan of the instrument to Miss Von Stosch, and told him that Miss Von Stosch was to play on a violin of their own make, but that they would withdraw in his favor, as there might be a chance of selling the violin to her. Miss Von Stosch subsequently played on defendant's violin at the concert referred to. The plaintiffs urged the value of the violin on Miss Von Stosch, and persuaded her to induce some of her friends to buy it for her. A few weeks after she met a Mr. McKay, who talked to her of the violin which she was playing on, and asked if it was the only one she had. She replied it was, and to his further inquiry if she knew of a better one she told him of the Stradivarius of the defendant. Mr. McKay told her if she could buy the instrument, to do so at once, and that he would send a check as soon as the matter was decided. She then went and saw the defendant, and the transaction was closed a few days later for $5,000. While Miss Von Stosch was negotiating the sale with defendant, he requested her not to go near the plaintiffs. On her replying that she had already seen them, defendant was put out, and told her that he had sent her a dispatch telling her not to go near them. She said that she did not see why she should not tell Gemunder,—why it should be kept a secret. He also said that plaintiffs would never get any commission out of him, and that he would rather sell it to another man for $4,500. The jury returned a verdict in favor of the plaintiffs for the sum of $525, the amount claimed, and interest. The defendant now appeals to this general term of this court from the judgment entered on the verdict, and also from the order denying the motion for a new trial.

By the pleadings it is conceded that the violin in question was sold for $5,000, and purchased by one Gordon McKay. The employment of the plaintiffs, as well as the rendering of any services, are denied by the defendant. It is also denied that the plaintiffs effected this sale or were the procuring cause of the same. The evidence on these points, being conflicting, was properly submitted to the jury, and, they having found that there was an employment and services rendered as claimed, the only serious question to consider is, was the sale of this violin made through the instrumentality of the plaintiffs, and they the procuring cause of such purchase or sale. We think from a careful examination of the facts in this case that the plaintiffs were the procuring cause of this sale. It was not necessary for them to know the purchaser if he was found through the efforts and instrumentality of the broker, for the broker then is entitled to compensation, although the owner negotiates the sale himself. Lloyd v. Matthews, 51 N. Y. 124, 133. Nor is it indispensable that the purchaser should be introduced to the owner by the broker, nor that the broker should be personally acquainted with the purchaser. Sussdorff v. Schmidt, 55 N. Y. 319, 322, 323. The facts in Sussdorff v. Schmidt are, indeed, very

similar to those of the case at bar.    In Levy v. Coogan, (Com. Pl. N. Y.) 9 N. Y. Supp. 535, Bischoff, J., says:

"If through the instrumentality of the broker the buyer and seller meet, and negotiations are thus opened between them which, continuing without withdrawal by either party therefrom, culminate in a sale, * * * I can see no equitable ground in support of the claim that the broker has not been the procuring cause of the sale, and has not for that reason earned the commissions."

See Sibbald v. Iron Co., 83 N. Y. 382; King v. Bauer, (Com. Pl. N. Y.) 8 N. Y. Supp. 466, 468.

We find no error on the part of the trial justice.    For these reasons judgment should be affirmed, with costs.    All concur.