McCREADY *v.* NICHOLSON.

1. TRIAL—CONDUCT OF COURT—CRITICISM OF COUNSEL.

The complaint of counsel for defendant that the trial judge was unfair in his rulings and unduly criticized defendant's counsel, *held*, not justified by the record, which shows that the trial judge was impartial in his criticism and interested only in the proper conduct of the trial.

2. BROKERS — COMMISSIONS — PROCURING A LEASE — TRIAL — INSTRUCTIONS—PROCURING CAUSE.

In an action by a broker for commissions on the procuring of a lease for defendant's building, where the defense was that defendant himself was the procuring cause, it was not error for the trial judge to refuse an instruction that if the lessee called defendant up with reference to said lease because he had seen the sign on the building, he then became a customer secured by defendant, since he might have called defendant up and still be the customer of plaintiff.

3. SAME — PROCURING CAUSE — REVEALING NAME OF CUSTOMER — TEST.

Where the broker has not an exclusive listing, the owner reserving the right to lease the premises himself, the true test in determining the broker's right to a commission is as to whether he was the procuring cause of the lease, and it is immaterial whether or not he revealed the name of his customer to the owner.

Error to Wayne; Hunt (Ormond F.), J. Submitted January 14, 1921. (Docket No. 15.) Decided March 30, 1921.

Assumpsit by Byron R. McCready against Louis A. Nicholson for a commission on the lease of a building. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cale & Kelly,* for appellant.

*Munro & Powell* (*Leo F. Covey,* of counsel), for appellee.

STONE, J.   This is an action in assumpsit in which the plaintiff seeks to recover certain commissions from the defendant, claimed to be due the plaintiff for obtaining and furnishing a tenant for the defendant of certain premises of the defendant, or premises under his control.   In January, 1918, the plaintiff was a real estate broker in the city of Detroit, specializing in leases of property for business and manufacturing purposes.   On or about the 8th day of January, 1918, the defendant, having had his attention called to the plaintiff's business, called upon the latter at his office and then and there entered into the following writing or agreement, known in the record as Exhibit 1:

"DETROIT, MICH., Jan. 8, 1918.
"If Mr. B. R. McCready will bring me a satisfactory tenant to lease my property located at N. W. corner of Monroe and Beaubien, I agree to pay him the regular real estate board commission.
(Signed) "L. A. NICHOLSON."

Upon the trial it was the claim of the plaintiff that pursuant to said agreement he did furnish a tenant, one Joseph C. Green and his partner, doing business as the Modern Pattern & Machine Company, for the defendant for said above described premises, and that said tenant entered into a lease for said premises with defendant for a term of 7½ years from and after July 1, 1918, which lease provides a rental of $500 per month during the term thereof, and that the regular real estate board commission upon such lease was the sum of $810.   The plea was the general issue, and upon the trial of the case a clear issue of fact was presented as to whether the obtaining of this tenant had been by the plaintiff, or, on the other hand, by the independent

efforts of the defendant, for it seems to have been con-·ceded that it was understood between the parties that if the defendant himself leased the building no commission was to be paid.

The plaintiff claimed upon the trial that he was instrumental in procuring this lease by having repeatedly interviewed Mr. Green, one of the tenants, and describing the property and interesting him in the same. It was the further claim of the plaintiff that he promptly informed the defendant of the name of the proposed tenant and detailed to him particularly the fact that the proposed tenant was Mr. Green and his partner, doing business as the Modern Pattern & Machine Company. It appears that after the making of Exhibit 1 a fire occurred in the building proposed to be rented and the making of the lease was somewhat delayed by reason of the fire, and the necessity of making certain repairs; but it was the claim of the plaintiff that, upon being notified by the defendant that the premises were in proper condition for occupancy, he informed defendant on June 6th of the name of the said tenant, and of his willingness to comply with the terms proposed.

On the other hand, it was the claim of the defendant upon the trial of the case that the plaintiff never mentioned to him the name of Mr. Green of the Modern Pattern & Machine Company, and that Mr. Green came directly to him, the defendant, and that the lease was made directly with Mr. Green entirely independent of, and outside of, the agreement relied upon by the plaintiff. Upon learning of the making of this lease, which finally was made and signed on the 11th day of June, 1918, the plaintiff, on the 5th day of July thereafter, made a demand for his commission, which demand was refused and this suit was brought.

As indicating the claim of the plaintiff, he testified upon the trial as follows:

"On the 27th day of May I simply told Mr. Nicholson that I had a client waiting for his property at that time, and I had not mentioned the Modern Pattern Works, who had called me on the first day of April, specifying a factory of this nature, and I also talked previous to that time to Mr. Green on the day of April 1st. When I told him (the defendant) that the Modern Pattern Works were the parties that I was trying to get to take the building, he said, 'Well, go to it. It is a fine property.'

"*Q.* That was just a short time before the lease was made, was it?

"*A.* Yes, sir; that was the last conversation, and about the 6th day of June."

The defendant, denying that the plaintiff had ever disclosed to him the name of the proposed lessee, testified as follows:

"Mr. McCready never talked to me about Mr. Green, only after the lease was signed he came up to my office. He called me up two or three different times and I called him up two or three different times and he never told me about Green. He told me once that he had an offer, but it was not satisfactory to me; I don't know who it was for. He never told me he had any particular person. He told me once he had a party who would give me $350. I don't remember how much, but it was not satisfactory and I didn't accept it. He did not give me the name of that person; after the lease was signed he called me up first and told me—he ought to have some commission, and I told him, 'What for?' He said, 'For the renting of my property on Monroe avenue.' I said, 'You didn't make the lease; you didn't bring any client.' Then he said, 'I will come over and see you and I will tell you I did, and show you I did.' He came up to my office and he was trying to prove to me Mr. Green was his client in the deal, and I told him, 'I will see Mr. Green anyhow,' and I know in addition, before I saw him, that Mr. Green called me up himself."

It is undisputed that Mr. Green finally, and on June 11, 1918, dealt directly with the defendant and the

lease was then made, but the plaintiff claims that he was the procuring cause of the lease. The plaintiff testified:

"Mr. Nicholson told me that if he leased the building himself, he would not pay me a commission."

There was much conflict in the testimony, especially between that of the plaintiff and the defendant. The learned circuit judge submitted the question to the jury as one of fact. Referring to the written agreement signed by the defendant the court in construing the term, "Bring me a satisfactory tenant," said:

"I charge you that the true and proper meaning, so far as you are concerned, means that he will discover and bring to his attention, or cause to bring to his attention, you see, a lessee, a prospect that is satisfactory to him as a tenant, or lessee of his property. And as it is admitted by the defendant that a man whom the plaintiff claims he discovered and showed this property to, and afterwards a lease was entered into between Nicholson and the man that the plaintiff claims now, remember—I am not deciding whether he did, but claims that he was the procuring cause of this lease being entered into; plaintiff claims that he was the procuring cause. I am going to submit that question entirely to you. If you find that the plaintiff McCready was the procuring cause of that lease, that was admittedly entered into between the Modern Pattern Machine Company by a preponderance of the evidence, he is entitled to his commission. It is immaterial whether he worked long or short, or no matter how little or how much he did, that is not a question for you to determine. Just, Was he the procuring cause of that lease? If you find that he was, plaintiff is entitled to recover. * * * Fairly considered now, was the plaintiff the procuring cause of this lease? If you find fairly and deliberately that he was, he is entitled to recover. * * * The burden is on the plaintiff to satisfy you."

The jury having found a verdict for the plaintiff for the full amount of his claim, judgment was entered

thereon and the defendant has brought error. There are 34 assignments of error. Nearly all of them relate to the rulings of the court in the admission and exclusion of evidence, and substantially error is assigned upon all the testimony on behalf of the plaintiff. The peculiarity of the case is that counsel for appellant in their brief mainly complain of the manner in which the trial court conducted the trial and of divers remarks made by the court during the introduction of testimony; and upon this subject, which is common to all of the assignments of error referred to, counsel say:

"We believe the controlling points in this case are the conduct and remarks of the trial judge, and the examination of witnesses by the trial judge. * * * It is apparent from even a casual examination of the record, that the trial court exceeded his right and his duties in the matter from the moment the first witness was sworn, and that the trial court practically acted as attorney for the plaintiff in this cause from the inception of the trial."

We have very thoroughly examined this record, as it is not a large one, and we fail to find that counsel are warranted in their criticism of the trial court. There was much persistence of counsel in the urging of objections, many of which were technical and contending for a very narrow construction of the contract. For instance, upon the examination in chief of the plaintiff, the following occurred:

"*Q.* Did you send to Mr. Nicholson a man that leased this property?
"*A.* Yes, sir.
"*Counsel for Defendant:* Just a minute. That is objected to, your honor, please. The contract calls for bringing to Mr. Nicholson a satisfactory tenant in so many specific words, and the answer to that question of sending a man would be immaterial.
"*The Court:* I think I will overrule the objection. You have an exception, whether he brought or sent a

man—supposing he took him up there in his automobile, is that what you call bringing him? Must he take him up physically?

"*Counsel for Defendant:* He must not only take him there, but be present when he is brought in the premises.

"*The Court:* No, that is overruled, that construction. You have an exception.

"*Q.* Did you communicate with Mr. Green of the Modern Pattern Works after you got this contract from Mr. Nicholson, with reference to this property?

"*A.* Yes, sir."

Counsel for defendant complain of unfairness, and undue criticism of the defense by the trial court. We do not think this claim is justified by the record. The court in the conduct of the case criticized plaintiff's counsel as much as it did defendant's, apparently being anxious to have the case proceed in the interest of the proper conduct of a trial. It would profit nobody to discuss all of these excerpts from the testimony upon which error is assigned because they are all claimed to point in the direction which we have indicated.

There was a number of requests to charge preferred by defendant's counsel. The only ones to which our attention is called in the brief are numbers 1 and 2. They are as follows:

"(1) I charge you that if you find that Mr. Green called Mr. Nicholson up, with reference to leasing the premises in question because he had seen the sign on the building, he then became a customer secured by Mr. Nicholson, and the defendant is not liable.

"(2) I charge you that if you find that the plaintiff did not tell Mr. Nicholson who the proposed lessee of the building was, the plaintiff was not the inducing cause of the lease, and the plaintiff is not entitled to recover."

We do not think the court erred in declining to give the first request to charge. Mr. Green may have called

Mr. Nicholson up with reference to leasing the premises because he had seen the sign on the building, and still Mr. Green may have been brought to the attention of the defendant by the plaintiff, notwithstanding that fact.

Did the trial court err in refusing to give defendant's second request to charge, in view of the language of the general charge above quoted? There are cases, especially in Minnesota (see *Quist* v. *Goodfellow,* 99 Minn. 509 [110 N. W. 65]) which, if followed, would indicate that the request should have been given.

The question, in this precise form, seems to be a new one in this State. There will be found a full discussion of the subject in a note to the case of *Hoadley* v. *Savings Bank,* 71 Conn. 599, found in 44 L. R. A. 321, also in a note to *Quist* v. *Goodfellow, supra,* found in 8 L. R. A. (N. S.) 153. The cases referred to and discussed in these notes are too numerous to be even cited here. We cite, however, the following typical cases: *Lloyd* v. *Matthews,* 51 N. Y. 124; *Sussdorff* v. *Schmidt,* 55 N. Y. 319; *Butler* v. *Kennard,* 23 Neb. 357 (36 N. W. 579); *Adams* v. *Decker,* 34 Ill. App. 17; *Graves* v. *Bains & Woodward,* 78 Tex. 92 (14 S. W. 256).

In *Adams* v. *Decker, supra,* the court said:

"It is wholly unimportant whether appellee (defendant) knew that his purchaser was sent by appellant (plaintiff) or not. It is sufficient if that was the *fact,* and he was not misled by the agent."

In the *Graves Case* the first headnote reads:

"If an agent be authorized to make a sale of land and a purchaser is procured by him, he is entitled to his commissions, and it is of no consequence that the owner did not know of the fact and made the sale himself."

The true test is, Was the broker the procuring cause of the sale or lease? If so, he is entitled to his commission. It must be said that the great weight of au-

thority, outside of Minnesota, is to the effect that if a broker, even though he did not have the exclusive agency, *was in fact* the procuring cause of the purchase or lease, and would otherwise be entitled to commissions, he will not be deprived thereof by the fact that the owner at the time of the sale or leasing did not know of the broker's instrumentality in procuring the purchaser or lessee. We are disposed to accept this doctrine as the law, and to hold that the trial court did not err in refusing to give said request.

Finding no reversible error in the record, the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.