## McKNIGHT v. THAYER.

(Superior Court of Buffalo, Trial Term.  September 22, 1892.)

**1. FACTORS AND BROKERS—SALE OF LAND—RIGHT TO COMMISSIONS.**

Plaintiff, to whom defendant had given, as a broker, the exclusive right to sell land, made to the trustees of a church, with defendant's sanction, a written offer to sell at the price fixed, after having been negotiating with them; and they agreed to buy if they should succeed in selling their church under a contract which they had made.  They failed to sell, and no further negotiations were had with plaintiff.  Defendant then terminated the exclusive contract with plaintiff, but continued him as his agent for the sale of the land, and agreed to pay him a commission if he should procure a purchaser.  Afterwards the trustees sold the church, and at once unanimously determined to buy defendant's land, and purchased it from defendant at the price at which plaintiff had offered it.  Defendant acted in perfect good faith, and under the belief that he alone had effected the sale.  *Held,* that the jury were warranted in finding that the sale was the result of plaintiff's efforts, and in such case he was entitled to his commissions.

**2. SAME.**

The fact that defendant sold to a person who he thought was purchasing for himself, and not for the church, does not affect plaintiff's right to his commissions, where, after learning that the purchase was for the church, defendant conveyed to it, when he could have avoided his contract.

Action by Theodore W. McKnight, a real-estate broker, against Reuel H. Thayer, to recover commissions for the sale of land.  There was a verdict for plaintiff, and defendant moves for a new trial.  Denied.

The evidence showed that after defendant had given plaintiff, for three months, the exclusive right to sell the land, plaintiff entered into negotiations with the trustees of a church, and, as a result, made them, with defendant's sanction, a written offer, at the price fixed, and that they agreed to buy, provided they should sell their church under a contract which they then had with one Bork.  The contract with Bork, however, fell through, and plaintiff failed to make the sale. After the expiration of the three months, defendant terminated the exclusive contract with plaintiff, but continued him as agent for the sale of the property, agreeing to pay him his commissions if he should procure a purchaser.  Plaintiff had no further negotiations with the trustees, but they afterwards sold their church, and determined to purchase the land from defendant, and authorized one Newman to do so.  Newman saw defendant, and, without the latter's knowing that he was acting for the trustees, procured an option to purchase the land at the same price for which plaintiff had originally offered it.  The sale was consummated, and defendant conveyed directly to the church.  He refused to pay plaintiff a commission.

Sidney Bovingdon, (John G. Milburn, of counsel,) for plaintiff.
Benjamin H. Williams, for defendant.

HATCH, J.  The uncertainties of the law, as applicable to this class of actions, is strongly illustrated by the present case.  There is not present the slightest evidence of bad faith upon the part of either party, and none is claimed.  The defendant sold his lot under the firm belief that he, and he alone, had effected the sale, and that plaintiff had not the remotest connection with it, and was therefore considerably astonished when a claim for commissions was made.  We are now to see if the law authorizes the verdict rendered.  The law of this case, like the law of negligence, is comparatively plain, but the fitting of the facts is quite likely to grow complicated.  The plaintiff claimed upon the trial that he was the procuring cause of the sale.  Upon that theory the court sub-

mitted the case to the jury, and upon that basis the verdict must be sustained, if it can be sustained. The cases have not at all times exhibited harmony of expression, largely the result of ambiguity in language, but recent cases have settled all faulty expressions and uncertain construction of words; and these are some of the general rules that have been announced:

"In all the cases, under all and varying forms of expression, the fundamental and correct doctrine is that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue." Sibbald v. Iron Co., 83 N. Y. 382. "It is sufficient to entitle a broker to compensation that the sale is effected through his agency as its procuring cause, and if his communications with the purchaser were the cause or means of bringing him and the owner together, and the sale resulted in consequence thereof, the broker is entitled to recover." Lloyd v. Matthews, 51 N. Y. 132. "The question whether the broker is entitled to commissions turns on the inquiry whether the things he has done while his agency continues have brought forth a party able, willing, and ready to accept the owner's offer of sale." Slater v. Holt, 10 N. Y. St. Rep. 261, 262.

In the light of these authorities, and many others, the facts are to be examined.

Plaintiff had for three months the exclusive right of sale. That he failed to procure a purchaser within that time is conceded. Defendant, therefore, had the right .to terminate the contract and withdraw the property absolutely from defendant's hands, without liability for commissions; and if he did this, acting in good faith, he could thereafter sell to the purchaser with whom plaintiff had negotiated, and avail himself of the fruits of plaintiff's labors, with no liability attaching for commissions. While defendant terminated the exclusive contract, he still continued plaintiff as agent for the sale of the property, with an assurance of commissions if he procured a purchaser. Did the jury have a right to find that he procured one? Plaintiff had made to the church trustees a written offer of sale, with defendant's sanction. He had seen the individual members of the board, and he continued to see and talk with them; and he had produced in their minds the conviction that this property was suited to their purpose, and a determination upon their part to purchase should they sell their church. It is, therefore, clearly seen that his efforts would be successful, dependent upon the contingency of Bork's fulfillment of his contract. This failed, and negotiations stopped; but, so far as the board of trustees were concerned, their minds did not change with respect to the property. They could not buy unless they sold. But, if they sold, plaintiff's efforts had produced conviction; and, when they finally sold, it needed no further efforts from plaintiff, defendant, or any other source, to set forth the advantages of defendant's property. They at once, unanimously, determined to purchase, and they did purchase, paying therefor the price which defendant had authorized plaintiff to offer the property for. What, then, produced this condition of mind in the board of trustees? The jury have made answer, upon all the facts, that it was plaintiff's efforts; and I am unable to see wherein the testimony fails of sustaining the conclusion. It is suggested that the church had ceased to be in the market as a purchaser after Bork's failure to fulfill his contract, and that, as no sale had then

been effected, its subsequent entry into the market is to be treated as though there had never been negotiations with them. This view is not supported either by the facts found by the jury or by authority. In this regard the case very much resembles Morgan v. Mason, 4 E. D. Smith, 636. In that case plaintiffs were employed to sell defendant's house ; a lady called, desirous of selling a house and purchasing another. She was informed of defendant's house as being for sale, with the price named. She examined it, and was suited with it; but, as her house was not sold, the matter rested. Three months after, her house was sold ; and she then called upon another party, and desired that he see defendant, and ascertain if he still wished to sell. This was done, and a sale accomplished. The opinion of the court says :

"These facts show that it was through plaintiff's instrumentality that Mrs. Kent was apprised of the fact that defendant's house was for sale, and the information thus received led to her ultimately purchasing it. "

In the present case, McKnight's efforts, as the jury have found, created a mind to buy, which ultimately led to the arrangement by Newman, vesting the church with title.

It is further suggested that as the church trustees never concluded a purchase with plaintiff, and were not ready to buy at any time when he saw them, therefore it is conclusively established that he failed to fulfill his contract. This view entirely excludes the result of plaintiff's efforts, and limits his right to commissions unless he be shown to have renewed negotiations followed by a purchase as the result of them. This view is not upheld by any authority cited, or by any that I am able to find. If plaintiff was the procuring cause, as the jury have found he was, then it matters not when, where, or under what circumstances he procured the purchaser, so long as his agency continued, and the sale was made, and whether he was present at the sale, or had no knowledge of it, becomes an immaterial fact. This the authorities sustain. In Sussdorff v. Schmidt, 55 N. Y. 322, Church, C. J., says:

"But if the purchaser is found by his efforts, and through his instrumentality, he is entitled to compensation, although the owner negotiates the sale himself. * * * Nor is it indispensable that the purchaser should be introduced to the owner by the broker, nor that the broker should be personally acquainted with the purchaser; but in such cases it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker. "

In this case the purchasers were attracted to the property by means of advertisements,—instruments used by the broker,—but he, in fact, did not know the purchasers, and had no negotiation with them; yet a recovery for commissions was upheld, based upon a finding, by the jury, that the things which the broker did were the procuring cause of the sale. In Lloyd v. Matthews, 51 N. Y. 132, the broker had called the purchaser's attention to the property, but did not know of the negotiations which effected the sale; and the defendant was ignorant of plaintiff's efforts in calling the purchaser's attention to the property, or that the purchaser came on account thereof. Upon this subject the court said, "It is sufficient that the purchaser is in fact such customer," and also that it was defendant's duty to inform himself of the source through which the purchaser procured his information respecting the property.

Other courts have announced a like doctrine.      In Hanford v. Shapter, 4 Daly, 243, the plaintiffs, brokers, called the attention of one Praul to the property sold, through the agency of a third party, Shattuck. Praul, in company with the purchaser, looked at the property, then went directly to the owner, concluding a purchase, at the time stating to the owner that no broker was connected with the matter.      Two questions were discussed: (1) Did the employment by defendant continue up to the time of the sale?      (2) Were the efforts of plaintiff the producing cause of the sale?      The first question was found in favor of plaintiff on conflicting evidence.      The second was found to exist from the undisputed facts, although defendant was ignorant of the connection of the broker with the matter, being informed that no brokers intervened. The court, however, held that he was not relieved from the payment of commissions, saying:

"If the plaintiffs, as brokers, under due employment by the owner, are the procuring cause of the sale, they are entitled to commissions, although the owner may close with the purchaser in ignorance of the fact that the latter had seen the brokers, if he is not misled by any act of the broker."

Upon similar and varying facts, a like result is reached in Lincoln v. McClatchie, 36 Conn. 136; Arnold v. Wood, 13 Wkly. Dig. 302; Winans v. Jaques, 10 Daly, 487; Anderson v. Cox, 16 Neb. 10, 20 N. W. Rep. 10.

It is further claimed that Newman was in fact the purchaser, and that, as the undisputed testimony shows Newman did not see or talk with plaintiff, therefore it can in no view be held that plaintiff was the procuring cause of the sale.      The claim begs the question involved, for, whether we treat Newman as an independent purchaser, or as the agent of the church, as he in fact was, the same question confronts us.      When the church had sold its property, it immediately determined to purchase defendant's.      This condition, as the jury have found, was produced by plaintiff.      The board said to Newman, "You buy for us;" and this he did.      If he acted for the church, then it was the result of the action of the trustees, and they were influenced to take such step and give such direction through plaintiff's efforts.      If we treat Newman as independent of the board, acting for himself, then, we inquire, what induced him to become a purchaser?      Where did he get his information that this property was in the market?      From the board, and they from plaintiff.      Thus we see that the primary source, in either event, is directly traceable to plaintiff.      In this regard the case very closely resembles — and in principle there is no distinction — Lincoln v. McClatchie, 36 Conn. 136.      The facts of that case were that one Goodwin, who was desirous of having his friend Burdick purchase property upon the street upon which he lived, saw an advertisement in the paper that plaintiff had property for sale on this street.      Upon application to him, he was informed of defendant's premises, examined the same, and reported to Burdick, advising him to purchase.      Thereupon, Burdick examined the property, and then went direct to defendant, who was ignorant of what had transpired, and concluded a sale.      Upon these facts it was held that the broker was entitled to commissions; that the

information imparted to Goodwin, and by him to Burdick, was to be treated as though imparted to the latter by plaintiff, and that as the sale was consummated, although at an advanced price over the sum named by plaintiff to Goodwin, yet that the former was to be treated as the procuring cause of the sale, and that defendant was liable for the commissions; and this result was reached notwithstanding the fact that defendant reserved the right to sell the property himself, the court announcing, upon the latter point, that the reservation of the right to sell meant a sale to a purchaser procured independently of the broker. It is said that this result cannot be reached in this case, for the reason that defendant would not have sold to Newman, had he known that the sale was for the church. But it appears that there was at no time a binding contract of sale between Newman and the defendant. The latter could have refused to fulfill the terms of his verbal agreement with Newman without liability to the latter or to the church, whatever might have been his attitude to the plaintiff in this respect. But, while the right of refusal thus rested with defendant, he was informed that the property was to be transferred to the church. He then had the opportunity to repudiate the agreement on the ground that he had been misled, or for any other reason. He also had opportunity to inquire with respect to plaintiff's connection with the transaction, and protect himself from liability for commissions. He, however, chose to convey to the church without inquiry or objection, and consequently must be held by the consequences. This reasoning, while it leads to the result that the purchase was by the church, yet it also reaches the conclusion that, whether the sale was to Newman or the church, the result must be the same, on the facts found.

Counsel for defendant cites and relies upon certain cases which, he claims, conclusively dispose of this question in favor of defendant. Of these are the following: Satterthwaite v. Vreeland, 3 Hun, 152; White v. Twitchings, 26 Hun, 504. In the latter of these cases, the broker was employed to sell certain property at a fixed price. He failed to sell, and the owner then opened negotiations with the same person, and succeeded in effecting a sale at an advanced price. It was held that, the broker not having effected a sale at the price authorized, the owner was at liberty to sell to the same person at an advanced price, without liability for commissions. The rule is here recognized that the broker must sell at the price named, or procure a purchaser at that price, or he fails, and is entitled to no commissions. But in the case we are now deciding the jury have found the broker a moving cause of sale, and the price received was such as the defendant asked, and had authorized the plaintiff to offer the property for. The difference between the cases is therefore apparent. In the other of the cases cited the principle of the decision is the same, but the fact in one respect is reversed; for, while in the White Case an enhanced price was obtained, in the other a lower sum was accepted. But in both the principle was applied, and has been in this decision recognized, that under the contract the broker was required to sell at the price given him, and, failing in that, no commissions were earned, for the reason that there was failure of compliance

with the terms of the contract which the broker had accepted. Of course the rule would be different if bad faith intervened, and defeated the broker's consummation of a sale. In Wylie v. Bank, 61 N. Y. 415, another of the cases relied on, the broker was authorized to sell at the price of $80,000. The best offer he was able to obtain was $75,000, and thereupon he practically abandoned the effort, when a third party intervened at the request of the purchaser, who had made the previous offer of $75,000, and through the latter agency they made offer of $80,000, which was the price asked, and which was accepted. Like the other cases, it was held that the broker failed to fulfill the terms of his contract, and in consequence was not entitled to recover. In the case cited, however, the court had no difficulty in reconciling the facts with this rule of law:

"The broker must be the efficient agent or the procuring cause of the sale. The means employed by him, and his efforts, must result in the sale. He must find the purchaser, and the sale must proceed from his efforts, acting as broker."

In this case, under a favorable charge for defendant, the jury has found that this was exactly the service rendered by plaintiff to defendant in this action. In Goldstein v. Walter, (Com. Pl. N. Y.) 7 N. Y. Supp. 757, the denial of plaintiff's right to recover proceeded from the fact that plaintiff was not the procuring cause of the sale,—a distinction upon which the decision in this case turns, as has been iterated and reiterated many times.

These are the only questions urged upon my consideration in this case. The result reached is adverse to very firm impressions held by the court prior to an examination of the facts and the law applicable thereto; but, after an extended and careful examination, I can find no ground upon which to set aside this verdict.

The motion for a new trial is therefore denied, with costs.