CORNELIUS A. LINCOLN *vs.* JAMES McCLATCHIE.

The defendant in the month of March put into the hands of the plaintiff, a real estate broker, for sale, a house in a certain city street, at the price of $6,500; the plaintiff to receive a commission of one per cent. if he sold the house, the defendant to have the right to sell it himself without being liable to a commission, and the plaintiff not to advertise. The plaintiff entered the house on his books and in December and January following advertised houses for sale on that street. *G*, who lived on the street and was desirous of finding a house near by for a friend, saw the advertisement and went to the plaintiff's office and learned that the defendant's house was for sale. He informed his friend, and the latter went to the defendant and negotiated with him for it and finally purchased it. The purchaser did not see the plaintiff nor go to his office, and *G's* action in the matter was wholly voluntary. Held that the plaintiff was entitled to his commission.

A sale made by the defendant, upon which the plaintiff was to have no commission, held to mean a sale to a purchaser found by the defendant wholly without the plaintiff's procurement.

The plaintiff by some misunderstanding had altered the entry of the price on his books from $6,500 to $6,000, and gave the latter price to *G* when he inquired. The defendant's price remained $6,500, and he sold the house for $6,400. Held that the plaintiff was still entitled to his commission.

Lincoln *v.* McClatchie.

ASSUMPSIT, to recover a commission for the sale of real estate, claimed to be due to the plaintiff as a real estate broker; brought to the Superior Court in Hartford county. The following facts were found by an auditor to whom the case was referred.

On the 14th of March, 1866, the defendant left with the plaintiff, a real estate broker in the city of Hartford, upon sale, a certain piece of real estate, with house and buildings, upon Canton street, in Hartford. The plaintiff was instructed not to advertise the place, but was to sell it at private sale for $6,500, and in case of such sale he was to receive one per cent. as a commission. The defendant was to have the right to sell it himself, and in that case the broker was to have no commission or pay. The plaintiff entered a description of the place, with particulars of price, &c. in his descriptive book, kept in his office for consultation by his customers. Subsequently the plaintiff reduced the price upon his descriptive book to $6,000, supposing that he had the defendant's consent, which the latter had not in fact given him.

In December, 1866, and in January, 1867, the plaintiff advertised houses upon Canton street for sale. One Goodwin resided upon Canton street, and had been looking for a house suitable for a friend of his named Burdick. He also took an interest in real estate matters generally, particularly in his neighborhood. He was attracted by the advertisement to the plaintiff's office, where he learned from the plaintiff that the defendant's house was for sale. The plaintiff gave him $6,000 as the price. Goodwin subsequently informed Burdick that McClatchie's house was for sale at $6,000. Burdick asked him to look at it and report to him. He did so, and advised Burdick to buy. Burdick then examined the house himself, and soon after entered into negotiation with the defendant personally, which resulted in the defendant's selling to Burdick the place, (with a few articles of personal property worth less than $100,) for $6,500, on the 18th of February, 1867. Burdick had no personal intercourse or dealing with the plaintiff. Goodwin's connection with the plaintiff in the mat-

ter was voluntary. Goodwin informed Burdick before he purchased that the house was in the plaintiff's hands for sale at $6,000.

If upon the foregoing facts the court should be of opinion that the defendant was not legally liable to the plaintiff, the auditor found the defendant not indebted, but if the court should be of opinion that upon the facts the defendant was liable, then the auditor found the defendant indebted to the plaintiff in the sum of $64, with interest from February 18th, 1867.

The Superior Court (*Loomis, J.*) rendered judgment for the defendant, and the plaintiff brought the record before this court by a motion in error.

*Hyde* and *Jones*, for the plaintiff.

The report finds— 1. That the plaintiff was employed to sell the property in question.  2. That the fact that it was for sale came to the knowledge of Burdick, the purchaser, through the act of the plaintiff as a broker; in other words, the agency of the plaintiff was really the procuring cause of the sale.  3. That Burdick, the purchaser, knew that it was in the hands of the broker at the time he went to see the seller.—Upon these facts we contend that the plaintiff is entitled to his commission.  If a broker, after being employed to sell, can show that his agency was the procuring cause of the sale, he can recover.  *Chilton* v. *Butler*, 1 E. D. Smith, 150.  " If the broker find the purchaser he will be entitled to his commission."  *Murray* v. *Currie*, 7 Car. & P., 584.  " If the broker, *as a broker*, introduces the parties, he is entitled to his commission."  *Burnett* v. *Bouch*, 9 Car. & P., 620.  " If the sale really proceeded in effect from the act of the plaintiffs acting as brokers, though they did not complete the contract, the plaintiffs are entitled to their commission."  *Wilkinson* v. *Martin*, 8 Car. & P., 1.  See also *Cook* v. *Fisk*, 12 Gray, 491 ; *Green* v. *Bartlett*, 14 Com. Bench, 681 ; *Stillman* v. *Mitchell*, 2 Robertson, 523, 538 ; *Lyon* v. *Mitchell*, 36 N. York, 235.  We trace, then, the knowledge the purchaser first had that the property was in the market directly to the

plaintiff's office and to the entry upon his books. The plaintiff was then, in law and in fact, the procuring cause of the sale, and in the language of the case of *Wilkinson* v. *Martin* above, " the sale really proceeded in effect from the act of the plaintiff acting as a broker."

*Cole*, for the defendant.

1. The office of a broker is to bring parties together and negotiate sales. He is defined to be " one who makes a bargain for another, and receives a compensation for so doing." *Pott* v. *Turner*, 6 Bing., 702, 706. He is an agent employed to make bargains and contracts between other persons, in matters of trade, commerce or navigation, for a compensation, commonly called brokerage. Story on Agency, § 28. The confidence is a personal one, and cannot be delegated. Ib.; *Loomis* v. *Simpson*, 13 Iowa, 532. He is employed because of his knowledge and skill in making bargains, to exercise his personal influence upon persons who desire to purchase.

2. The broker cannot recover unless he can show that he was the procuring cause of the sale which was made ; that he discovered the 'purchaser and commenced the negotiations which resulted in a sale ; and the employment of a broker does not preclude the owner from selling. *Chilton* v. *Butler*, 1 E. D. Smith, 150. The owner may employ several brokers, and only the one who effects the sale can recover. *Holley* v. *Townsend*, 2 Hilton, 34 ; *Ludlow* v. *Carman*, id., 107, 109. In the former case the owner employed a broker to sell. The broker stated he could do nothing with the lots, but subsequently informed another broker that the property was for sale, and through the latter a sale was effected. Held that the second broker was the procuring cause of the sale. The original discovery of the purchaser, and the starting of the negotiations by the broker, and a final closing of the bargain by or on behalf of the principal, are conditions precedent to the right to recover. *Stillman* v. *Mitchell*, 2 Robertson, 538. The following case sustains the defendant's claims to the fullest extent : " A real estate broker is not entitled to a commission until the agreement he has attempted to nego-

tiate has been actually concluded. If, before the conclusion of that agreement, it is broken off, and afterwards, without his intervention, the parties make an agreement as to part of the property, and upon essentially different terms, he is not entitled to any commission." *Barnard* v. *Monnot*, 34 Barb., 90.

3. Between all decided cases in which the broker has recovered commissions, and this case, there is one important distinction. In all those cases there has been a personal interview between the broker and purchaser, a personal influence exerted by the broker upon him and an introduction to the seller. This case lacks all those essentials to the right of recovery. Lincoln, the broker, did not see the purchaser, did not negotiate with him, did not sell the property to him, and did not know of the sale until after McClatchie had made it. Therefore he cannot claim to have performed any of the duties appertaining to the office of a broker as defined in the authorities cited above.

4. The maxim, " causa proxima, non remota, spectatur, " applies in this case. " It were infinite for the law to judge the causes of causes, and these impulsions one of another, therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." Bac. Max., Reg. 1. The court cannot investigate the wanderings of a piece of information started by Lincoln, for such an inquiry might be infinite in its extent, and would be too uncertain in its character. If such information could be traced through one man it might through a hundred, and so on infinitely, and no court could say where the line should be drawn and the investigation cease, and no man could be safe in selling his own property after placing it in the hands of another for sale. The only proper inquiries are, who discovered the purchaser, started the negotiations, and effected the sale. The action of Goodwin having been voluntary, cannot effect the claims of either party. The fact that Lincoln had, by mistake, entered the property on his books and offered it at $6,000, while McClatchie sold it for $6,500, shows conclusively that the agency of Lincoln was not the procuring cause of the sale, as it must have been to enable him to

recover.  *Barnard* v.  *Monnot,* 34 Barb., 90.  His efforts under that mistake could only have been detrimental to the interests of McClatchie.

5.  The case of the defendant is even stronger than it would be in the absence of a special agreement, because by the terms of that agreement Lincoln was only to have a commission in case he effected a sale, he was prohibited from advertising, and the defendant reserved to himself full power to make the sale independently of the broker, in which case no commission was to be paid.  The broker is not entitled to any special consideration.  The case stands just as if McClatchie had said to any man, not a broker, "I have this place for sale ; if you will sell it without attracting the public attention by advertising I will pay you a commission ; at the same time I desire to retain full power over the property myself, and sell the same to any purchaser that may apply, without liability to you."  Lincoln took the property on these terms, and cannot complain.

PARK, J.  If Burdick, the purchaser, had gone to the office of the plaintiff to ascertain what real estate there was for sale and there obtained all the information that was communicated to Goodwin, and in consequence thereof had opened a negotiation with the defendant to purchase and had finally purchased the premises, the counsel for the defendant concede that he would have been liable.  *Murray* v.  *Currie,* 7 Car. & Payne, 584 ; *Wilkinson* v. *Martin,* 8 id., 1 ; *Burnett* v. *Bouch,* 9 id., 620.

But the claim is, that the fact that the information that Burdick received was communicated to him by Goodwin, who received it from the plaintiff while he was not acting as the agent of Burdick in procuring it, materially alters the character of the transaction, and renders the defendant not liable to the plaintiff.

It appears that Goodwin was the personal friend of Burdick, and knew that the latter wished to purchase a dwelling house. His friendship prompted him to search for a suitable place for his friend that was for sale.  He saw an advertisement of

the plaintiff of houses for sale upon Canton street, and went to his office for information about them. He there learned that the defendant had a house for sale, and was told the price. This information he communicated to Burdick, and informed him that the house was in the plaintiff's hands for sale. Burdick thereupon requested Goodwin to examine the premises and report to him. Goodwin did so, and advised Burdick to purchase. Burdick then examined the house himself, and soon after entered into negotiation with the defendant to purchase, which resulted in a sale.

Had Burdick in the first instance requested Goodwin to do what was done by him in this transaction, the case would have stood precisely as if Burdick had procured the information himself from the plaintiff, on the principle *qui facit per alium facit per se,* and the defendant in that case would clearly have been liable. Is the case materially different? Goodwin acted for Burdick in procuring the information. He did not casually obtain it, but went to the office of the plaintiff to ascertain what intelligence he had to disclose. Burdick acted upon the information when communicated to him by Goodwin, knowing from what source it had been obtained. He adopted the acts of Goodwin, which was equivalent to a previous request to perform the acts. The plaintiff was pursuing the business of a broker in giving the information, and Goodwin received it for Burdick in the capacity of a messenger and conveyed it to him. Suppose Goodwin had informed the plaintiff for what purpose he inquired, and the information had been given for the purpose of being communicated to Burdick, would the case for the plaintiff have been stronger? The information was given in order to procure a purchaser, and can the fact that Goodwin did not make known for whom he was acting make any material difference, when his act operated directly to bring the buyer and seller together? They show that the plaintiff was the procuring cause of the sale, as much as would have been the case if Goodwin had made known his business, or Burdick had gone in person to the office of the plaintiff and obtained the information himself.

The defendant further claims that he specially reserved the

right to sell the property himself, without being liable to pay a commission to the plaintiff. We think the proper construction of the understanding was, that the defendant should have the right to sell to a purchaser found by him independently of the plaintiff's procurement.

. For these reasons we think there is manifest error in the judgment complained of.

In this opinion the other judges concurred.