LEMUEL G. HOADLEY vs. THE SAVINGS BANK OF DANBURY.

Third Judicial District, New Haven, Jan. Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In an action by a real estate broker to recover his commission, a letter of his to the defendant (the owner of the property), written before the consummation of the sale, stating that an offer made directly to the owner was due to the broker's intervention, is admissible in evidence, not to prove the truth of the statement, but merely to show the attitude and conduct of the parties in respect to the transaction.

The admission of evidence on rebuttal instead of in chief, is within the discretion of the trial court.

In the absence of a special contract, a broker with whom land is placed for sale is entitled to the customary commission, in case a sale is effected with a purchaser who was led to begin the negotiation through the broker's intervention. It is immaterial that such purchaser was formerly in fruitless negotiation with the owner, or that the latter secretly took up and carried on the negotiation begun by the broker until it resulted in a sale, or that he voluntarily sold for a price less than that given to the broker. Nor can the owner escape liability by afterwards telling the broker that he will pay no commission if he decides to sell at a certain sum.

The question whether a particular person was the "procuring cause" of a sale, is one of fact for the trier; but the ultimate conclusion or inference of the trial court must accord with the subordinate facts

found and with the settled rules of logic and sound reasoning, otherwise it is reviewable as an error of law.

The subordinate facts in the present case reviewed and *held* to justify the inference drawn therefrom by the trial court.

Facts adjudicated by the trial court cannot be retried by this court upon the certified testimony.

The omission from the finding, of facts which, if included, would not affect the correctness of the rulings made, is not a ground of error.

The proper procedure on appeals to this court, and the purpose, scope and effect of the finding, stated and explained.

Argued January 25th—decided March 9th, 1899.

ACTION to recover for services rendered as a real estate broker, brought to the City Court of New Haven and thence by the defendant's appeal to the Superior Court in New Haven County and tried to the court, *Roraback, J. ;* facts found and judgment rendered for the plaintiff for $500, and appeal by the defendant for alleged errors in the rulings and findings of the court. *No error.*

The finding of the trial court is as follows:—

"1. The plaintiff is and for a number of years has been a real estate agent doing business in the city of New Haven. 2. In December, 1897, John W. Bacon and James Osborne, the president and vice-president, respectively, of the Savings Bank of Danbury, the defendant in this action, called at the office of the plaintiff in New Haven, and placed the property then owned by said bank and known as the Elliott House, situated on the corner of Chapel and Olive streets, in said city of New Haven, in the plaintiff's hands for sale. 3. Both said Bacon and said Osborne were in the practice of visiting New Haven each week from the time they placed said property in the hands of plaintiff for sale until early in the following February, when the property was sold to Mr. George H. Bishop, and on each of said visits called at the plaintiff's office to inquire as to the prospects of sale. 4. At the first or second visit of the said Bacon and Osborne to the plaintiff's office, in December, 1897, Mr. Bacon produced and read to the plaintiff a letter dated some eighteen months prior to that time, which letter contained an offer of some $38,000 for said property, made in behalf of one George H. Bishop, the party

who became the purchaser of the property in the following February. 5. At the time of reading said letter said Bacon or Osborne said to the plaintiff that said Bishop might be a possible purchaser, and requested the plaintiff to see him and use his influence to induce him to buy the property. 6. The plaintiff then agreed to see Mr. Bishop in reference to the property, and did call at his office twice during December, but failed to find him. 7. About the first of January, 1898, the plaintiff, on going again to Mr. Bishop's office to see him in reference to this property, met him on Chapel street, and talked with him regarding the property, stating that the bank was particularly anxious to sell and avoid the expense of alterations in the property which it would be compelled to make if it was not disposed of, and that he, Bishop, could purchase the property at a very low price, and for a number of thousand dollars less than he had previously offered for the same property, and that the property was as good then as it ever was. 8. A few days later said Bishop called twice at the office of the plaintiff to obtain the keys of the Elliott House to examine the property, and not finding the plaintiff at his office left word with his bookkeeper as to the object of the visit. 9. The plaintiff on being informed of Mr. Bishop's calls telephoned him that by going to the Elliott House barber shop and using his, the plaintiff's, name, he could secure entrance to the property. 10. Said Bishop about the middle of January after receiving this information from the plaintiff did call at the Elliott House as directed, and examined the property. 11. On another and subsequent occasion in January, 1898, the plaintiff met Mr. Bishop while the latter was in his carriage on Chapel or State street, and had a further talk with him regarding the purchase by him of the Elliott House property. 12. At the time of the sale of the property to Mr. Bishop, and at the request of the bank officials, the said Bishop executed and delivered to the bank a bond,* agreeing

---

* The material part of the bond is as follows: I, George H. Bishop, in consideration of the sale to me by the Savings Bank of Danbury, of the property known as the Elliott House property, " do agree with the Savings Bank of Danbury that I will pay all taxes assessed against said

to hold the bank harmless from any commission to the plaintiff.    13. The property was sold to Mr. Bishop for the sum of $25,000, he to pay whatever commissions there might be due for the sale of the property as a part consideration thereof. 14. On the 5th, 12th, and 17th of January, 1898, said John W. Bacon saw Mr. Bishop in New Haven, and talked with him regarding some changes the bank contemplated making in said property in case the same was not sold, and also spoke to him regarding his purchase of the property.    15. Mr. Bacon, though visiting at the plaintiff's office each week in reference to the sale of this property during said month of January, did not inform the plaintiff that he was having any negotiations with Mr. Bishop, nor did the plaintiff have any notice whatever that any one connected with the bank was negotiating with Mr. Bishop until after the sale of the property to the latter.    16. The Elliott House was a well known piece of property, and Mr. Bishop was familiar with it, having made an offer some sixteen months previous to December, 1897, but until the interview with the plaintiff about the 1st of January, 1898, he had made no move regarding this property since his previous offer, and had abandoned his negotiations for the purchase of the same for the period of a year and a half, or more.    17. Two per cent is the ordinary established and usual commission, in the absence of any agreement to the contrary, for the sale of real estate.    18. No agreement for any special rate of commission was made between the parties to this suit.    19. The plaintiff was the procuring cause of the sale of said property to said George H. Bishop at the price of $25,000, and the commission due him for the same is $500.    20. The plaintiff in his opening testimony offered

property during the year 1897 and which are now unpaid, and which having been so assessed will become due and payable on the 1st day of October, 1898." And I further agree " that I will guarantee said the Savings Bank of Danbury against the payment of any commissions to Lemuel G. Hoadley, of said New Haven, for the sale of said property; and I do hereby agree to save said the Savings Bank of Danbury harmless and free from any payment, loss, damage, costs, or expenses by reason of any commission or claimed commission from Lemuel G. Hoadley for the sale of said property."

a letter written on the 5th day of February by himself to John W. Bacon, then an officer and president of the defendant bank. The letter was written after the plaintiff had learned from Bishop that he, Bishop, had made an offer for the property. The defendant objected to so much of the letter as follows: 'Which offer comes from Mr. Bishop on account of my bringing to his notice the property of the Elliott House being for sale.' 21. The entire letter is as follows: 'John W. Bacon, Treasurer, Danbury, Conn. Dear Sir. About two weeks ago I called Mr. George H. Bishop's, of Peck & Bishop Company, attention to the Elliott House property as a very desirable piece of property to own. At that time he seemingly did not take much interest in the matter; told me he would think it over. He called at my office a few days ago and requested the keys, and I gave him the instructions left by you some little time ago, as I have previously written you, to go to the barber shop in the Elliott House building and use my name, where he could get the keys handed him by request to inspect the property. He has examined the building, etc., and this A. M. informs me that he has submitted to the bank an offer in writing, which offer comes from Mr. Bishop on account of my bringing to his notice the property of the Elliott House being for sale. Yours truly, L. G. Hoadley.' The objection of the defendant to the letter was stated as follows: '*Mr. Stoddard.* It seems to me, if your Honor pleases, that while some parts of this, the first part, possibly, might be admissible for some purposes, that this part which reads as follows: 'Which offer comes from Mr. Bishop on account of my bringing to his notice the property of the Elliott House being for sale,' was no proper matter tending to prove the fact, and I object to that part of the letter as tending to prove the fact that the sale was brought about by Mr. Hoadley, because it is a declaration in his own interest, and after the sale was made.' The ruling of the court upon the admission of the letter was as follows: '*The Court.* I don't think, gentlemen, that that statement is binding upon the bank, but I think the letter to the bank is admissible. I don't think the fact that this man said that this sale was brought

about by his efforts is binding or conclusive; but the fact that he made such a statement to the defendant in this case I think is admissible, and I should allow it to come in for the purpose of proving the fact that he said so.' 22. The plaintiff in opening his case offered the deposition of James Osborne, of the Danbury Savings Bank, and in connection therewith counsel for the plaintiff and defendant made the following statements: '*Mr. Wright.* There is a deposition here of Mr. James Osborne, of the Danbury Savings Bank. There is only a portion of this deposition that is pertinent to our case in chief, and I will only read so much of it as I claim now, and leave the balance for rebuttal. The deposition is as follows: [reading deposition]. That is as far as I care to read now. *Mr. Stoddard.* That is down to and including the answer 12 on page 4 of my copy? *Mr. Wright.* Yes. *Mr. Stoddard.* Well, very well. *Mr. Wright.* Let me examine it a little further; it may be possible there is only a question or two. If you have no objection we might read the whole deposition now. *Mr. Stoddard.* You must take your own course. *Mr. Wright.* Well, I will stop there.' 23. After the defendant had rested, and in the evidence in reply, the plaintiff offered to read the remainder of said deposition, and among other questions and answers the following from his direct examination in said deposition. 'Q. 15. Were you present at a meeting of the directors of the Savings Bank of Danbury when Mr. Bishop's offer for the Elliott House was received and acted upon?' The defendant objected to the question as immaterial, irrelevant, and not within the issues, and because it should have been offered in the opening if at all. The court overruled the objection, and the defendant duly excepted, and the witness answered, 'I was.' 24. Thereupon plaintiff offered Q. 16 of said deposition as follows: 'Q. 16. Where was such meeting so held, and who was present thereat?' The defendant objected to this question as immaterial, irrelevant, and not within the issues of the case, and that it ought to have been introduced if at all in the opening. The court overruled the objection, admitted the question, and the defendant duly excepted. The witness an-

Hoadley *v.* Savings Bank of Danbury.

swered: ' The meeting was held in the directors' room in the Savings Bank of Danbury; Judge Brewster was there, Henry M. Robinson was there, Mr. Woodman of Bethel, and Dwight H. Rogers, Mr. Henry C. Ryder, the treasurer, and myself. I don't recollect whether Mr. Hartwell was there; they'll back up my testimony to-day.' This evidence was claimed to show what the transaction between the bank and Mr. Bishop was; what the property was sold for; what was said regarding the commission, and what arrangements were made regarding the commission on this transaction. Counsel for the plaintiff in offering this evidence stated that he was not sure whether it was evidence which should have been introduced in the opening, or rebuttal, and therefore he asked the court in the exercise of its discretion to admit the testimony. The testimony admitted after the court had notified the defendant that it would be given an opportunity to reply to this testimony if it desired so to do. 25. The defendant claimed upon the trial under the above and foregoing evidence that the plaintiff was not the procuring cause of the sale to Bishop of the property in question, and that upon the above and foregoing facts he was not entitled to recover his commission as a broker upon the sale of said property to said Bishop. The defendant also claimed under the arrangements between the officers of the bank and the plaintiff, that the plaintiff was not entitled to recover any commission, in view of the fact that the property was sold for no more than $25,000; and the defendant desires to review the above questions of law."

The substance of the correspondence claimed as showing the legal effect of the bond of Mr. Bishop, was as follows: February 2d, 1898, Bacon writes to Hoadley: " You spoke once of submitting in writing a low offer for the place, the buyer to pay all commissions and taxes. If you have any such or any other offer, or any suggestions, I will esteem it a favor if you will let us hear from you this week, so we can talk up the matter at our board meeting next Monday."

February 3d, 1898, Bishop writes to Bacon: " Since you left have been thinking how I might use the Elliott House,

and have decided that if you wanted to accept $25,000 cash that would handle it myself."

February 4th, 1898, Bacon writes to Bishop: "Replying to yours of yesterday, I cannot answer until our board meets next Monday. We have had two offers for the property at the price you name, which we have declined. I do not think our board would care to consider any such price, unless the purchaser would first agree to pay the taxes becoming due this year, and second, guarantee us against the claim of any real estate agent for commission on the sale. If you will make these modifications I will submit your proposal to our board next Monday, and advise you of their decision."

February 5th, 1898, Bishop writes to Bacon: "Have received your letter this morning, and as the sale of this property has been entirely between ourselves there would be no commission for you to pay to anyone." The writer then declines to pay the taxes, but offers to pay uncompleted insurance, and if bank desires, to continue a loan for $25,000, with additional security.

February 5th, 1898, Hoadley writes to Bacon: (See letter as printed in par. 21 of the finding, ante, p. 603.

February 7th, 1898, Bacon writes to Bishop: "Replying to your favor of the 5th I very much regret that you did not think best to modify your offer, as suggested in my letter of the 4th. Perhaps after further consideration you will conclude to do so. I enclose confidentially two letters from Mr. Hoadley, which please return, and oblige."

February 7th, 1898, Bishop writes to Bacon: "Have received your favor of to-day, and while knew my offer was low, still for the use I want to put it to it was as much as I felt like offering. . . . I enclose you the two letters which you kindly sent me and which amount to nothing, as you and I both understand that there would be nothing coming in that direction from your people, provided the property was sold to me, and thought would ask your opinion confidentially whether your bank would be willing to divide the amount of taxes with me if I should make that offer; also, whether they would prefer cash, or care to make loan, and if so how much?

I expect to leave for Nebraska the first of next week, probably going through to California, and if do anything should have to do it at once, and write this to you in confidence, as do not care to make any more offers which in your opinion would be refused."

February 8th, 1898, Bacon writes to Bishop: "Replying to yours of yesterday, I can only repeat that our board would not consider the price you name unless the buyer will pay the taxes, and also guarantee us against the claim of any real estate agent for commission. I trust you will consider our correspondence entirely confidential, as the lowest price we have ever given Hoadley is $33,000, though he once wrote us asking if $30,000 would buy the place, and we replied that we would consider such a proposal if made."

February 9th, 1898, the agreement to pay the taxes and to guarantee the bank against the payment of any commissions to Hoadley, was signed by Bishop.

The defendant incorporated into its request for a finding a large number of facts which it claimed had been proved; filed exceptions to the finding of the court and to the refusal to find facts contained in the request; and asked that all the evidence in the case be certified.

The appeal assigns error in the admission of evidence as stated in the finding, in the judgment as rendered upon the facts found, in the omission to include in the finding certain facts claimed as material to the questions of law raised, and many alleged errors in conclusions of fact.

*Henry Stoddard* and *J. Birney Tuttle*, for the appellant (defendant).

*William A. Wright*, for the appellee (plaintiff).

HAMERSLEY, J. The letter of the plaintiff to the president of the defendant corporation was not admitted as a declaration in support of the truth of the statements it contained, but as a fact relating to the conduct of the parties in respect to the transaction in dispute, prior to the consummation of the sale. For that purpose it was admissible.

The admission of the latter part of Osborne's deposition, upon rebuttal, was within the discretion of the court.

The other claims of the defendant are included under four heads : 1. The alleged insufficiency of the facts found to support the judgment rendered.   2. The alleged insufficiency of the testimony given to support the facts found.   3. The alleged omission from the finding of facts material to present the questions of law decided by the court.   4. The alleged finding of material facts without any evidence to support them.

*First.* Where an owner places land with a real estate broker for sale, he agrees, in the absence of any special contract, to pay the customary commission or brokerage in case a sale is consummated with a purchaser who was led to begin the negotiation through the intervention of the broker.   It is immaterial that the purchaser at some prior time had been engaged in a bootless negotiation with the owner in respect to the same property, or that the owner, after the broker has interested the purchaser, secretly pursues the negotiation and himself completes the sale, or that the owner of his own accord effects a sale at a less price than that he gave the broker.   If any act of the broker in pursuance of his authority to find a purchaser is the initiatory step that leads to the sale consummated, the owner must pay the commission.   *Lincoln* v. *McClatchie*, 36 Conn. 136, 141; *Schlegal* v. *Allerton*, 65 id. 260, 264.   Applying this well settled law to the facts found, judgment for the plaintiff must follow.

Whether or not a particular person is the " procuring cause " of a sale, is a question of fact for the jury ; but the defendant claims that upon a trial' to the court the conclusion of the judge is erroneous if he violates any rule or principle of law in drawing that conclusion from the subordinate facts found, and that if his conclusion from the subordinate facts is in plain conflict with the settled rules of logic and sound reasoning, he does violate a principle of law and his conclusion is reviewable by this court as an error in law.   This claim is correct. *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159, 173, 183.   Testing the judgment in view of this claim, the court

below finds that the plaintiff interviewed Bishop (the purchaser), called his attention to the property, and urged upon him considerations that should induce him to renew his negotiation for its purchase ; that in pursuance of this Bishop applied to the plaintiff for permission to examine the property, obtained entrance to the building through information given him by the plaintiff, and examined the property; and that shortly after his mind had been so directed by the plaintiff to a purchase, the defendant, through its president, Bacon, without the knowledge of the plaintiff, took up the negotiation with Bishop which resulted in a sale. There are no other facts which essentially affect the force of these upon the question of " procuring cause."

We cannot say that the inference drawn by the court from these facts is unreasonable. The procuring cause of sale is such intervention of the broker for that purpose as constitutes the foundation on which the negotiation is begun. The court might reasonably infer that the efforts of the plaintiff to induce Bishop to renew his attempt to purchase were the origin of the negotiation and resulting sale. If so, the plaintiff was the procuring cause.

*Second.* The facts adjudicated by the trial court cannot be retried here upon the certified testimony. This is too firmly settled by repeated decisions to admit of discussion. A record should not be cumbered with such futile assignments of error.

*Third.* The defendant claims that the fact that the sale was made by the defendant through its president to Bishop, and the fact that the exclusive sale of the property was not given to the plaintiff, were improperly omitted from the finding of the court. The facts seem to be substantially included in the finding; but however that may be, an inspection of the evidence certified shows that they were admitted or undisputed facts; and we have treated them as included in the finding. The omission of such facts is not an error that affects the judgment, unless by correcting the record and including them in the finding, it appears that the court erred in its ruling on some question of law material to the judgment. The correct-

ness of the rulings of the court below is not affected by including these facts in the finding.

The defendant further claims that the fact that the defendant, through its president, told the plaintiff, before the property was sold, that if the defendant was compelled to sell the property for $25,000, no broker's commissions would be paid by the defendant, is improperly omitted from the finding. This fact might be material to present a question of law raised by the defendant on the trial, and if it were an admitted or undisputed fact its omission would be an error which, if material, we should correct. An inspection of the evidence certified does not sustain the defendant's claim. If we were to treat this fact as included in the finding, the defendant's claim of law could not be sustained. After a broker has rendered the services which make him the procuring cause of a sale, the owner cannot escape liability by telling the broker that he will pay no commission if he decides to sell at a certain sum. The alleged remark of Mr. Bacon, to have any force, must have been made prior to the rendition of the plaintiff's services. This does not appear. The law is clear that a broker does not forfeit his commission because the owner avails himself of the services rendered to sell at a price less than that limited (*Schlegal* v. *Allerton, supra*) ; and the owner's position is not improved, if he seeks to fortify his evasion of liability by telling the broker, after the rendition of the services, that he will pay no commission if he (the owner) sells at such price.

The other exceptions to the finding do not call for special notice.

*Fourth.* The claim that the court has found material facts without any evidence to support such finding, is baseless. On the contrary, it is apparent from the record—and the more apparent the closer the record is studied—that any judge hearing this evidence, weighing the conflicting testimony and passing on the credit of the witnesses as they appeared upon the stand, might reasonably reach the conclusion of the trial court.

In *Thresher* v. *Dyer*, 69 Conn. 404, 408, we stated the legal

effect of recent legislation (since consolidated in the Act of
1897, Public Acts of 1897, pp. 888, 895), relative to proce-
dure on appeals to this court. The peculiar construction of
this appeal suggests the advisability of a more particular
statement.

A finding by the trial judge is unnecessary when the rec-
ord of the court, including the judgment file, discloses the
alleged errors; that is, it is unnecessary when the appeal is
used as a substitute for the former motion in error; but the
ultimate and subordinate facts on which the judgment is
founded must, on request of counsel, be stated in the judg-
ment. When the appeal is used as a substitute for the former
motion for a new trial, or for such motion as well as for a
motion in error, a finding by the trial judge is necessary, and
may serve a triple purpose.

First, it may contain a statement of the facts on which the
judgment is founded. Strictly these facts should appear in
the judgment, as when the appeal serves the purpose only of
a motion in error; but the practice is, authorized inferentially
by the statute, to include these facts in the finding, when one
is necessary. No error can be assigned in respect to weigh-
ing the evidence from which these conclusions are drawn.
They are adjudicated facts which this court cannot retry.
Where the ultimate facts are mere conclusions from subordi-
nate facts found from the evidence, a party is entitled to have
the subordinate facts stated, for such conclusions may be re-
viewable. But these subordinate facts must be facts found
from the evidence, and not a mere recital of the testimony.

Second, the finding may contain a statement of facts found
which are necessary to present a question of law, and the
question of law must be one made at the trial and decided by
the judge. Such facts, whether affirmative or negative, are
adjudicated facts which this court cannot retry; but they
may not be included in the statement of facts on which the
judgment is founded, because the question of law which made
them material has been decided adversely by the judge. It
is for the purpose of securing the statement in the finding of
such facts, that the process provided in sections nine and ten

of the Act of 1897 is chiefly efficacious. If such facts are omitted, the appellant may file exceptions to the finding and have the evidence relevant to the question certified, for the purpose of making it appear by the record that it was an admitted or undisputed fact. Or, if this course is not followed, the appellant may, under sections eleven and twelve of the Act, apply to this court to rectify the appeal. But in either case, it must appear that the omitted fact was an admitted or undisputed fact, and that its statement in the finding is necessary to properly present a question of law decided adversely to the appellant. If it so appear, then the finding will be corrected by treating it as containing the fact, and the question of law will be considered in view of the corrected finding. This process is well adapted to prevent the omission from the finding, of material facts found by the trial court, but it is an abuse to use the process for the mere purpose of asking the statement of a fact in the language of the counsel rather than of the judge, or of loading the record with insignificant facts.

Third, the finding may contain a recital of what actually took place at the trial, for the purpose of presenting for review rulings of the trial court upon questions of evidence or other rulings not directly affecting the judgment. Such recital is made from the notes of the judge, which were formerly the only authentic source from which such facts could be made to appear, but now the notes of the official stenographer furnish another authentic source. And, if necessary, under the provisions of sections eleven and twelve of the Act, such notes may be made to appear in the finding, so that this court may review the rulings complained of, in connection with the state of facts existing at the trial as shown by the recital of the judge read in the light of the certified evidence. The addition of long extracts from the stenographer's notes, is, however, rarely necessary; a brief statement by the judge is clearer and usually sufficient.

The process authorized by the statute is intended, primarily, to facilitate the fullest possible exercise of jurisdiction by this court in correcting errors in law, and we have given

the statute a very broad construction to give effect to this purpose. If an appeal is properly prepared by the appellant, it is difficult, if not impossible, for a trial court to so frame a finding that this court cannot get at the substantial errors in law involved. So far, however, as the language of the statute may imply a determination by this court upon the evidence certified, of facts lawfully adjudicated by the trial court, it was decided in *Atwater* v. *Morning News Co.*, 67 Conn. 504, and in subsequent cases, that we are prevented from giving it effect by the paramount authority of the Constitution.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.