(Judge Taggart, of the fifth circuit,, sitting in place of Judge Marvin.)

### MARY H. LIPPERT ET AL. v. W. B. PAGE.

1. INCOMPETENT HEARSAY EVIDENCE ADMITTED WITHOUT OBJECTION HAS SOME PROBATIVE FORCE.

Incompetent hearsay evidence, when admitted without objection,. has some probative force.

2. REAL ESTATE BROKER REQUIRED TO SHOW THAT PURCHASER WAS INDUCED TO APPLY TO OWNER THROUGH MEANS EMPLOYED BY BROKER.

To entitle a real estate broker to recover commissions he must show that the purchaser was induced to apply to the owner through means employed by the broker. It is not indispensable, however, that the purchaser be introduced to the owner by the broker, or that the broker be personally acquainted with the purchaser, or that the broker at the time have knowledge of the negotiations between the owner and the purchaser.

[Syllabus by the court.]

ERROR to Cuyahoga common pleas court.

*A. R. Odell,* for plaintiffs in error:

Cited and commented upon the following authorities: *Schwartz* v. *Hoyne,* 54 Ill. App. 499; *Gleason* v. *Nelson,* 162 Mass. 245 [38 N. E. Rep. 497]; *Vanstone* v. *Hopkins,* 49 Mo. App. 386; *Jones* v. *Frost,* 24 Misc. 208 [53 N. Y. Supp. 573]; *Johnson* v. *Seidel,* 150 Pa. St. 396 [24 Atl. Rep. 687]; *Earp* v. *Cummins,* 54 Pa. St. 397; *Colwell* v. *Tompkins,* 6 App. Div. 93 [39 N. Y. Supp. 478]; *Whitcomb* v. *Bacon,* 170 Mass. 479 [49 N. E. Rep. 742; 64 Am. St. Rep. 317]; *Commercial Nat. Bank* v. *Hawkins,* 35 Ill. App. 463; Evans, Agency 341; *Lincoln* v. *McClatchie,* 36 Conn. 136; *Gleason* v. *Nelson,* 162 Mass. 245 [38 N. E. Rep. 497].

*George A. Grott,* for defendant in error:

Cited and commented upon the following authorities: *Schwartz* v. *Yearly,* 31 Md. 270; *Lincoln* v. *McClatchie,* 36

Conn. 136; *Carter* v. *Webster,* 79 Ill. 435; *Newhall* v. *Pierce,* 115 Mass. 457; *Mooney* v. *Elder,* 56 N. Y. 238; *Lloyd* v. *Matthews,* 51 N. Y. 124.

**WINCH, J.**

This is a proceeding to reverse a judgment recovered by Page on a claim for commissions on the sale of a small farm of six acres in Warrensville township, Cuyahoga county, Ohio. The sole error complained of is, that there was not sufficient evidence produced before the jury to sustain its verdict. It is said that the plaintiff below failed to show that by *his* efforts a sale of the property was made.

The evidence was very conflicting; the defendants below not only denied having authorized Page to sell their property for them, but denied that he had in any way directly contributed as the efficient cause to the sale which was finally made.

After carefully considering the evidence, and allowing for an absolute disbelief in some statements of the defendants which the jury doubtless had because of manifest untruths in other parts of their testimony, we think it may be said fairly that the following is all the plaintiff proved regarding the transaction:

About September 1, 1907, W. B. Page, a real estate man, called upon the Lipperts at their home in Warrensville and made a verbal agreement with them whereby he was to try to find a purchaser for said real estate at a price above $1,000, and was to have all over said sum that any purchaser furnished by him might pay for it, the Lipperts retaining the right to find a purchaser themselves. It was also arranged that in order that the Lipperts might know Page's customers Page was to give his business cards to everybody sent by him, and the Lipperts were to ask everybody who went there to buy, or to consider buying the place, whether they came at Page's suggestion, or were sent by him, and if the customer said that he came by or through Page, then the Lipperts were to regard him as Page's customer.

Thereafter, Page advertised in the "Plain Dealer" that he had six acres of land in *Euclid,* of North Woodland avenue

for sale, and this advertisement was seen by one Mary Benbow, and she, about September 20, wrote to Page asking for information, regarding the property and when she could see it. Page replied by postal card telling where she could find him, and afterwards she called him up by 'phone, or wrote him a letter, so as to make arrangements to see the property. He wrote back giving her directions, and subsequently met her with a horse and buggy at Stop No. 10 on the Gates Mill line, driving with her about a mile and a half to the property, which, upon inspection, Mrs. Benbow decided not to buy, but told Page, or Mrs. Page, who was with them, that she had some friends in mind whom she thought would be glad to buy the property, and that she would let them know about it. Thereafter, she told one Elizabeth McCullock about the property, and the latter told Andrew Hogg, who was a friend of Mrs. Benbow, and he and his wife called upon Mrs. Benbow to find out about the property, and also sent their sons to her for information concerning it. Mrs. Benbow gave them Page's postal card and also his business card, and told them about the property, where it was, and that Page was asking $1,350 for it. She told them to call up Page for further information. They attempted to do so twice, but did not get him on the line, and receiving from Mrs. Benbow more specific directions as to how to find the property, they sent their two sons to see it about Thanksgiving time. They reported, and a few days later went out again to the place and talked with the Lipperts, who live upon the adjoining farm. On Thanksgiving day Mr. Hogg and his wife went to see the property and Mrs. Hogg told Mr. Lippert that it was through Mr. Page she was buying the property; whereupon Lippert told her that he had taken the property out of Page's hands, and that his price for it was $1,200. Shortly after Thanksgiving day the sons went again to the property with instructions to buy it, and, paying down $20, received a receipt for said sum as part payment on the purchase price, and reported to their parents. The sale was shortly thereafter concluded between the Lipperts and Hoggs and a deed was delivered on December 5, 1907. Page never saw or

Lippert v. Page.

personally communicated with the purchasers, and never knew of any of the negotiations the purchasers had with the Lipperts until after the deed was made—perhaps not until January, 1908.

It is proper to say that our finding that Mrs. Hogg told Mr. Lippert that she was buying the property through Page is based wholly upon hearsay evidence, found in the bill of exceptions on page 23, where Mrs. Benbow, without objection, was permitted to testify that Mrs. Hogg had told her that she so stated to Mr. Lippert, and that he thereupon informed her that he had taken the property out of Page's hands.

Hearsay evidence has some probative force. It is not inherently without weight, for we act upon it daily in our business affairs. It is only the rules of law which have made hearsay evidence incompetent, and there are many exceptions to the general rule. Nor is the rule universal in all countries. In Scotland, France and other countries, hearsay evidence is received in the courts of law and given such credit as it should properly have.

It has been held in this state that incompetent hearsay evidence, when admitted without objection, has its natural probative effect. *Thompson* v. *Ackerman*, 12 Circ. Dec. 456 (21 R. 740). The opinion there expressed is supported by the authorities cited.

The question remains whether all the evidence as heretofore stated, shows any direct connection between Page and the sale.

It may be conceded as claimed by plaintiff in error, that ''to entitle a real estate broker to his commission for furnishing a purchaser of real estate, he must be the procuring cause of furnishing such purchaser. In order to be the procuring cause, he must be the proximate cause, not a remote cause or cause of causes.''

We cannot subscribe, however, to the balance of plaintiff in error's claim that:

''To entitle Page to a commission from the Lipperts on account of said sale, it must appear that he by himself per-

sonally or by others acting under authority from him as his agents, was the procuring cause. To entitle him to the benefits of what Mrs. Benbow and Miss McCullock did in the matter, it must appear from the evidence that they were authorized or directed by Page to do what they did. It is not enough that the information was transmitted the whole length of the chain from one to another by Page directly or through others who were expressly authorized by him as his agent.''

A very instructive note on this subject, citing many authorities, most of which we have examined, is found appended to the case of *Hoadley* v. *Bank*, 71 Conn. 599 [42 Atl. Rep. 667; 44 L. R. A. 321]. The cases relied upon by plaintiff in error lack the one distinguishing feature of this case, to-wit: the advertisement of the property in a newspaper.

We take it that when a broker advertises property for sale in a newspaper of general circulation in the community, he naturally expects, not only that his notice, if attractively worded, will be read by many persons who may see it in the paper, but that it will be repeated by the readers to others and discussed by many who did not see the paper. He thus *intends* the natural results of inserting an advertisement in a newspaper, and why should he not have the benefit of the natural results of his deliberate act?

It may be conceded that ordinarily it would be very difficult for the broker to trace the connection between his ad and a purchaser who did not read it, but got his information from another who had read it; however, in this case the chain is complete; we know that the Hoggs learned of this property only because Page advertised it.

Furthermore; it was agreed between the parties that if any intending purchaser should inform the Lipperts ''that he came by or through Page, then the Lipperts were to regard him as Page's customer,'' and this Mrs. Hogg did.

There are cases which sustain the view here expressed.

The syllabus of the case of *Anderson* v. *Cox*, 16 Neb. 10 [20 N. E. Rep. 10], is as follows:

''A landowner employed an agent to sell his real estate

Lippert v. Page.

upon commission. The agent advertised the land at his own expense, and a neighbor seeing the advertisement directed a buyer to the farm, and thereby a sale of the land was effected. There being a dispute as to the contract between the land-owner and agent, *Held,* That the sale being effected through the agent's advertisement constituted a strong equity in his favor.''

The first paragraph of the syllabus of the case of *Lincoln* v. *McClatchie,* 36 Conn. 136, reads as follows:

"The defendant in the month of March put into the hands of the plaintiff, a real estate broker, for sale, a house in a certain city street, at the price of $6,500; the plaintiff to receive a commission of one per cent if he sold the house, the defendant to have the right to sell it himself without being liable to a commission, and the plaintiff not to advertise. The plaintiff entered the house on his books and in December and January following advertised houses for sale on that street. G, who lived on the street and was desirous of finding a house near by for a friend, saw the advertisement and went to the plaintiff's office and learned that the defendant's house was for sale. He informed his friend, and the latter went to the defendant, and negotiated with him for it and finally purchased it. The purchaser did not see the plaintiff nor go to his office, and G's action in the matter was wholly voluntary. Held that the plaintiff was entitled to his commission'.

This case was approved and followed in the case of *Hoadley* v. *Bank, supra,* being the same case annotated in the L. R. A., heretofore referred to. On page 608 of the opinion in that case we find the following language:

"Where an owner places land with a real estate broker for sale, he agrees, in the absence of any special contract, to pay the customary commission or brokerage in case a sale is consummated with a purchaser who was led to begin the negotiations through the intervention of the broker. It is immaterial that the purchaser at some prior time had been engaged in a bootless negotiation with the owner in respect to the same

4 O. C. C. Vol. 32

property, or that the owner, after the broker has interested the purchaser, secretly pursues the negotiation and himself completes the sale, or that the owner of his own accord effects a sale at a less price than that he gave the broker. If any act of the broker in pursuance of his authority to find a purchaser is the initiatory step that leads to the sale consummated, the owner must pay the commission.''

This statement of the law is perhaps broader than we are willing to subscribe to. It is not indispensable that the purchaser should be introduced to the owner by the broker, nor that the broker should be personally acquainted with the purchaser; but in such cases it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker. *Sussdorff* v. *Schmidt*, 55 N. Y. 319; *Derrickson* v. *Quimby*, 43 N. J. Law 373.

Upon the whole case as shown by the bill of exceptions, remembering that the credibility of the witnesses is a matter peculiarly for the jury, and that plaintiffs in error by their testimony, which was manifestly false in some particulars, must have shaken the jury's faith in them in all particulars, we are unable to say that the evidence introduced was insufficient under the law as we understand it, to sustain the verdict.

Judgment affirmed.

**Henry** and **Taggart, JJ.,** concur.