MELDRUM, Respondent, vs. SOUTHWICK-SELLERS LAND COM-
PANY, Appellant.

*May 2—May 21, 1914.*

*Real-estate brokers: Commissions: Procuring cause of sale: Prior
negotiations between principals.*

1. A broker employed to find a purchaser for real estate may be
the procuring cause of a sale and entitled to a commission
thereon, if he initiates the negotiation which results in such
sale, notwithstanding the principals in the transaction had
previously negotiated with each other in respect to the pur-
chase and sale of the same property, provided such prior nego-
tiations had been abandoned before his intervention.

2. The abandonment of negotiations is one thing, abandonment of
the purpose to buy or sell another.

3. If the owner abandons direct negotiations with a possible pur-
chaser for the purpose of beginning anew through another
channel and thereby obtaining a better price, the broker of
whose services he knowingly avails himself in carrying out
that purpose is entitled to compensation.

4. The evidence in this case is *held* to sustain findings by the jury
that prior negotiations with the purchaser had been broken off
and that the plaintiff was the procuring cause of a sale.

APPEAL from a judgment of the circuit court for Portage
county: BYRON B. PARK, Circuit Judge. *Affirmed.*

The defendant was a corporation controlled by E. W. Sell-
ers with headquarters at Stevens Point, Wisconsin. It owned
land in Northern Wisconsin which it desired to sell. The
plaintiff was a real-estate agent residing at Park Falls, Wis-
consin. The defendant employed the plaintiff as its agent to
procure a purchaser for its lands generally at $10 per acre, or
such other price down to $8 per acre as might be satisfactory
to defendant. It promised to pay the plaintiff a commission
of $1 per acre for lands sold by it to any purchaser procured
by plaintiff. The Wisconsin Realty Company was a cor-
poration controlled by E. P. Sherry, with headquarters at
Milwaukee and having an agent named Saunders at Park

Falls.   It desired to buy the tract of land in question, being part of that which the defendant had for sale.   F. R. Sellers, an agent of the defendant, resided at Milwaukee.

Commencing March 21, 1911, Mr. Sherry for the Wisconsin Realty Company and Mr. E. W. Sellers for the defendant were engaged in negotiations by correspondence for the purchase of the tract of land in question until July 27, 1911, when at a personal interview at Milwaukee between Mr. Sherry and F. R. Sellers the former made an offer of $8 per acre for the land.   July 28, 1911, E. W. Sellers wrote Mr. Sherry to the effect that he could not consider an offer of $8 an acre for the land with the growing timber.   The next day Mr. Sherry answered, saying he did not want to buy the timber without the land, that he might feel like renewing his offer of $8 per acre, but required an immediate answer. Mr. E. W. Sellers did not reply to this letter, and the correspondence between E. W. Sellers and Mr. Sherry ceased until November 17, 1911.   The evidence would indicate that E. W. Sellers and Mr. Sherry was each quite a consummate tactician in the making of land sales or purchases.   September 11th E. W. Sellers wrote to the plaintiff at Park Falls suggesting that the latter get busy and put over a deal of this land before the land was sold, and plaintiff answered the next day, saying that he had kept himself quite busy on this plat of land and had been talking with Mr. Saunders and that the latter wished for his lowest price and also the estimates on this land.   E. W. Sellers claims he did not know Saunders was the agent of the Wisconsin Realty Company, and the plaintiff did not know that E. W. Sellers was or had been in negotiation with the Wisconsin Realty Company.   September 18th E. W. Sellers wrote Saunders inclosing a plat of the land and making a price on the timber only, and on the same day sent a copy of this letter to the plaintiff.   September 20th Saunders transmitted this to Mr. Sherry at Milwaukee, and on the next day the latter wrote Saunders suggesting that he

did. not understand why E. W. Sellers had written to him, but supposed that E. W. Sellers did not know that Saunders was associated with the Wisconsin Realty Company. He also suggested to Saunders that the latter should not write to Sellers on the Wisconsin Realty Company stationery, and suggested an offer of between $7 and $8 per acre if time was given upon part of the purchase price. He also stated in substance that his company would pay $8 per acre, but did not authorize that offer to be then made. September 25th Saunders wrote E. W. Sellers, as suggested by Sherry. September 26th Sellers replied to Saunders, rejecting the proposition of the latter. September 27th plaintiff wrote to E. W. Sellers informing him of progress of plaintiff's negotiations with Saunders and that Saunders was representing a company which would prefer to buy the land with the timber and that E. Sherry of Milwaukee was one of the largest stockholders of this company. September 28th Saunders wrote to Sellers asking his lowest price, etc. September 29th E. W. Sellers wrote Saunders, fixing a price for the land and timber at $12.50 per acre. On the same date E. W. Sellers wrote to plaintiff informing the latter that he had received an offer of $7 to $8 per acre from Saunders which he declined and also informing plaintiff that he, Sellers, had not heard from Mr. Sherry and would advise plaintiff promptly if he did. Also inclosed a copy of the letter of September 29th which he had written to Saunders. September 30th Saunders sent E. W. Sellers's letter of September 29th to Sherry and suggested, among other things, "we apparently have got them going a little. The question we are up against now is how much more they will shade their price. They are evidently hard up and need some ready money." He asked Sherry for further instructions. October 2d Sherry wrote Saunders suggesting that the latter offer $8 per acre for the land and timber, one fourth cash, balance in one, two, three, and four years, with five per cent. interest. Also stating that he might

feel like going up to $9 per acre provided the terms were satisfactory, but adding: "You need not say that to them now." October 2d Saunders wrote to E. W. Sellers as suggested in the letter of Sherry to Saunders of this date. October 3d plaintiff wrote E. W. Sellers acknowledging receipt of the letter of the latter to him of September 29th, saying also that he had since talked with Saunders and thought they were going to examine the lands and calling for the estimates. October 7th E. W. Sellers wrote to plaintiff informing the latter of Saunders's offer of $8 per acre and that he would not accept it. Also inclosing a diagram and estimates and stating: "I hope you will be successful with some one else." October 11th Saunders wrote Sherry making suggestions relative to strategy of offers, including a suggestion that Sherry take the matter up with E. W. Sellers inasmuch as Sherry had had some previous correspondence with Sellers. October 12th Sherry wrote Saunders that he did not think it advisable for him to take the matter up with E. W. Sellers, but that correspondence should be carried on by Saunders, and suggested that the latter offer to pay a little more cash down. October 14th Saunders wrote E. W. Sellers requesting an answer to his letter of October 2d and intimating that his parties would make a larger cash payment if necessary. October 18th plaintiff wrote Sellers a letter containing this statement: "Received yours of the 11th stating that you had heard from Mr. Saunders and he had made you an offer of $8. Well, I have been talking with Mr. Saunders since and some others, but the best offer I have been able to get is about $9 so far, with a payment of about half down." October 27th E. W. Sellers wrote to plaintiff acknowledging receipt of plaintiff's offer of about $9 with a payment of about half down and offering to sell for $10 per acre, half cash, etc. And further stating that he, E. W. Sellers, will come to Park Falls for a personal interview and to arrange details. October 30th Saunders wrote Sherry that plaintiff had been trying to sell this land and had been to see him several times

about it, and further stating in substance that he had an offer from plaintiff at $9 per acre and requesting instructions. October 31st plaintiff wrote E. W. Sellers that Saunders was manager of the Wisconsin Realty Company and would have to consult with Sherry. It would not be necessary for E. W. Sellers to come to Park Falls, as the head office of the company was in Milwaukee and they would most likely prefer to do the business there. October 31st Sherry wrote Saunders stating that F. R. Sellers had been at his office in Milwaukee with a letter from his brother, E. W. Sellers, stating that he had an offer of $9 per acre from some one at Park Falls and suggesting that it probably referred to the plaintiff, *Mr. Meldrum*. The letter also informs Saunders that Sherry had said to F. R. Sellers that the best they could do was $8 per acre, which would amount to $4,144, or that they might pay an even $4,200 for the land, and pay all cash if promptly accepted. The letter then suggests: "If *Mr. Meldrum* has any more talk with you, we would suggest that you advise him that you would want time on a considerable portion of it. He talked as though they were in very urgent need of funds and wanted to know how quickly it could be closed up. It is our opinion that our offer is the nearest that they have had to making a trade on it, and it might be possible that we could secure it at $4,200 if we can arrange to pay cash." November 17th Sherry wrote E. W. Sellers as if he were taking up the old negotiations by correspondence apparently broken off on July 29th. November 20th E. W. Sellers wrote Sherry saying: "We have your esteemed favor of the 17th inst. and do not find anything on this timber subject since July 29th offering $8 per acre for the land and timber." He then offers to sell for $10 per acre. November 20th E. W. Sellers wrote plaintiff transmitting him a copy of the letter of November 17th from Sherry to him and suggesting that the Wisconsin Realty Company were old customers and customers of his brother, F. R. Sellers, and stating that he did not know they were the same people plaintiff had been figuring with. He

also suggested that although plaintiff in his letter of October 31st (September 7th?) mentioned a Mr. Sherry they did not know he was the same Mr. Sherry connected with the Wisconsin Realty Company. He suggested that if the deal went through, "there is you and Mr. Saunders and my brother at least to satisfy." He informed plaintiff of the stage at which the negotiations had arrived, and then: "Now that you are fully advised in the premises you can act accordingly, and would be glad to have you keep us fully advised." November 21st E. W. Sellers went to Milwaukee and closed the deal with Mr. Sherry at $8.70 per acre. November 23d plaintiff wrote E. W. Sellers acknowledging receipt of the foregoing letter of November 20th. November 29th E. W. Sellers wrote plaintiff saying that the deal with the Wisconsin Realty Company was not closed. He hoped it would be, and wanted to know what division of commission would be satisfactory to the plaintiff. December 13th E. W. Sellers wrote plaintiff stating that he closed up the deal with the Wisconsin Realty Company, but held up the payment of commissions until he could hear from plaintiff. This letter contains the following: "You understand that the Wisconsin Realty Company had been clients of ours; have sold them before; and we have figured with them for a year or more, and they have had a standing offer for this timber for some months and we did not know that you were figuring with the same people."

The defendant offered to show by Mr. Sherry that the act of *Mr. Meldrum* in talking with Mr. Saunders about the transaction did not influence Sherry's judgment in any way about the land. The court excluded this evidence. The court instructed the jury as follows:

"A broker will be deemed the procuring cause of a sale if his intervention is the foundation upon which the negotiation resulting in the sale is begun. He is the procuring cause if it appears that the sale is the result of his, the broker's, initiative. . . . The broker may be the procuring cause of a

sale notwithstanding the fact that the owner of the property and the purchaser, prior to the broker's becoming interested in the matter, negotiated with each other in relation to the sale and purchase of the property, provided these negotiations had ceased—had been abandoned—without resulting in an understanding, and negotiations afterward initiated by the broker resulted in bringing about a sale between the owner and the party the owner had previously negotiated with. A broker cannot be said to be the procuring cause of a sale of real estate merely because he invites it to the attention of another who is already in active negotiation for its purchase; nor because he mentions to the owner as a possible purchaser one with whom the owner is already treating, when the final purchase results from a continuation of such pre-existing negotiations, unaffected by the broker's act. Under this rule of law the plaintiff is not the procuring cause of the sale to the Wisconsin Realty Company, if you are satisfied by the evidence that negotiations opened up by the Wisconsin Realty Company in March, 1911, were not abandoned and terminated by the defendant, and the actual sale was unaffected by the plaintiff's acts. But if you find from the evidence that the defendant on the receipt of the letter from the Wisconsin Realty Company dated July 29, 1911, Ex. 112, abandoned the negotiations with the Realty Company, so that the negotiations ceased to be active negotiations, without any understanding that they should be renewed in the future, then, if you also find from the evidence that the plaintiff thereafter, in September, 1911, started negotiations through the agent, Saunders, and set in motion negotiations, for a time conducted them with Saunders under Sellers's instructions, which negotiations Sellers and the Realty Company finally took up directly one with the other, and which negotiations thereafter finally resulted in the sale on November 21st, the plaintiff would be, under such state of facts, the procuring cause of the sale."

The case was submitted to the jury upon special verdict consisting of two questions, as follows: .

"(1) Was the contract between the plaintiff and defendant, made July 24, 1909, providing for a commission of one dollar an acre, modified in April, 1910, so that in lieu of a commission of one dollar the commission should be five per

cent. of the purchase price of the land with the timber there-on?    *A.* No.

"(2) Was the plaintiff the procuring cause of the sale by the defendant to the Wisconsin Realty Company in November, 1911?    *A.* Yes."

The appellant assigns error as follows: (1) In denying its motion to direct a verdict in its favor; (2) in denying its motion to answer the second question of the special verdict in the negative; (3) in instructing the jury; (4) and (5) in several other particulars depending upon the foregoing; (6) in rulings upon evidence.

For the appellant there was a brief by *Fisher, Hanna & Cashin,* and oral argument by *W. E. Fisher.* They cited *Sexton v. Goodrich,* 131 Wis. 146, 111 N. W. 206; *Burdon v. Briquelet,* 125 Wis. 341, 104 N. W. 83; *Burd v. Webster,* 128 Wis. 118, 107 N. W. 23; *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 130 N. W. 513; *Chase v. Woodruff,* 133 Wis. 555, 113 N. W. 973; *Richards v. Noyes,* 44 Wis. 609; *State Bank v. Dutton,* 11 Wis. 371; *Johnson v. Wilson,* 1 Pin. 65; *Gibbon v. Hughes,* 76 Wis. 409, 45 N. W. 538; *Taylor v. Tigerton L. Co.* 134 Wis. 24, 114 N. W. 122; and many cases in other states.

For the respondent the cause was submitted on the brief of *Holland & Lovett,* attorneys, and *Geo. B. Nelson,* of counsel. They cited *Stewart v. Mather,* 32 Wis. 344; *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074; *Burdon v. Briquelet, supra; Oliver v. Katz,* 131 Wis. 409, 111 N. W. 509; *Zitske v. Grohn,* 128 Wis. 159, 107 N. W. 20; and many cases in other states.

TIMLIN, J.    This case presents some fairly difficult questions.    It would seem that Mr. Sherry, from the early part of March, 1911, until the closing up of the transaction on November 21, 1911, entertained a persistent desire to purchase this land if he could get it at his price.    It also seems that defendant during this time was actuated by a persistent desire to sell this land at its higher price.    There was there-

fore no abandonment of the project from this personal and mental viewpoint.  But abandonment of negotiations is one thing, abandonment of the purpose to buy or sell another. The purpose to buy or sell usually means to buy or sell at a satisfactory price, but not if such price is unattainable.  At the same time there is evidence tending to show that E. W. Sellers, representing the defendant, and Mr. Sherry, representing the purchaser, each sought for strategic purposes to impress the other with the belief that the negotiations were at an end and abandoned.  Each immediately and for the purpose of helping out this deception invited another and subordinate agent of the seller and buyer to open what appeared to the plaintiff to be original and new and independent negotiations.  The defendant as seller at this stage enlisted the activities of the plaintiff, its agent, and the Wisconsin Realty Company as buyer enlisted the activities of Mr. Saunders, its agent.  Saunders knew of the former negotiations between the principals, but was in substance instructed to conceal the fact that he was acting for the Wisconsin Realty Company, and he did so.  The plaintiff knew that Saunders was acting for the Wisconsin Realty Company, but did not know of the existence of the prior negotiations by his principal with that company.  The defendant knew that the plaintiff was negotiating a sale with Saunders, but professes not to have known that Saunders was the agent of the Wisconsin Realty Company represented by Mr. Sherry. It had early information sufficient to put it upon inquiry that this was the fact, and after having positive information that this was the fact it authorized or permitted the plaintiff to proceed with his negotiations.

We think that under the circumstances the jury was authorized to find that the first direct negotiations were abandoned for the purpose of beginning anew through another channel and thereby obtaining more satisfactory results. The defendant might well be held to the position it assumed in this regard.  The jury might infer from the evidence that

the defendant chose to discontinue the first direct negotia-
tions and to negotiate through the plaintiff for the purpose
of thereby obtaining a better price and so making a sale.
Knowing that the plaintiff was acting for it under a contract
which called for a commission, it availed itself of his services
to obtain a higher price.    There is also evidence from which
the jury might infer that E. W. Sellers knew that the plaint-
iff was negotiating with the Wisconsin Realty Company
through Saunders at least as early as September 27th.    Hav-
ing arrived at the conclusion that there was evidence to sup-
port a finding that the first negotiations had been abandoned
and broken off, whether with intent to give up the idea of
buying and selling or for strategic purposes, it was properly
a question of fact whether the plaintiff's efforts were the pro-
curing cause of the sale which was afterward consummated
upon terms better for the seller than those theretofore offered
by the purchaser, and a little less than those which appar-
ently could have been secured by plaintiff had the closing up
of the transaction remained in his hands.    *Burdon v. Bri-
quelet,* 125 Wis. 341, 104 N. W. 83; *Hoadley v. Savings
Bank,* 71 Conn. 599, 42 Atl. 667; *Rounds v. Allee,* 116 Iowa,
345, 89 N. W. 1098, and cases in briefs of counsel, *supra.*

It follows that there was no error in refusing to direct a
verdict for the defendant or in refusing to change the answer
to the second question of the special verdict.    The instruc-
tions to the jury were appropriate to the case of an abandon-
ment of prior negotiations between the principal and the
buyer and a subsequent sale of which the broker was a pro-
curing cause, and while they might have been more full in
view of the peculiar character of the evidence, still they con-
tain nothing incorrect.    We find no reversible error in the
rulings upon evidence.    The judgment is as near to the jus-
tice of the case as it is possible to arrive, and no rule of law
was violated, so we have concluded to affirm.

*By the Court.*—Judgment affirmed.